No. 16,798.

## THE CITY OF INDIANAPOLIS v. BIELER.

INTERSTATE COMMERCE.—*Police Regulation by State.*—Congress may, by appropriate legislation, subject any article of interstate commerce to the police regulations of any State.

SAME.—*Intoxicating Liquors.*—Under the act of Congress approved August 8, 1890, intoxicating liquors transported from one State into another for use, sale, or storage in the latter State, are subject to its police regulations.

CITY.—*License of Breweries, etc.—Discrimination.—Constitutional Law.*—An ordinance of the city of Indianapolis licensing breweries, distilleries and their depots and agencies established in the city, with other wholesale dealers in malt liquors, but excepting from its operation residents of the city doing a wholesale business in bottled beer, is, as to the exception sought to be made, void for discrimination.

SAME.—*Ordinance Void in Part and Valid in Part.*—Where the part of an ordinance which is void for discrimination can be struck out, leaving the remainder complete in itself, sensible and capable of being executed against all alike, the latter will stand.

SAME.—*License Ordinance.—Language Construed.*—An ordinance requiring a license fee of "every person or persons, firm, corporation or company carrying on a distilling or brewing business  *  *  and of all breweries and distilleries," applies to every establishment, and exacts a separate fee for each one.

SAME.—*License Fee.—Amount Discretionary With City Authorities.*—Where a city is granted power, by the Legislature, "to tax, license and regulate distilleries and breweries," etc., an ordinance imposing a license fee is an exercise of police power in restraint of a harmful occupation, and the fee to be required is subject to the discretion of the city authorities.

From the Marion Circuit Court.

*L. O. Bailey, A. Q. Jones, A. Baker, E. Daniels* and *J. E. Scott,* for appellant.

*C. A. Korbly, W. O. Ford, D. W. Howe* and *C. F. Coffin,* for appellee.

HOWARD, C. J.—By section 23 of "An act concerning the incorporation and government of cities having more

than one hundred thousand population according to the last preceding United States census, and matters connected therewith, and declaring an emergency," approved March 6th, 1891, Acts 1891, p. 137 (148), it is provided, amongst other things, that such cities shall have power "to tax, license and regulate distilleries and breweries, and the depots or agencies established in said city of all breweries and distilleries."

By virtue of the authority so given, the city of Indianapolis adopted the following:

"GENERAL ORDINANCE No. 17, 1891.

"An ordinance designating the license fee to be paid the city of Indianapolis by distilleries and breweries, and the depots or agencies in said city of all breweries and distilleries, and all wholesale dealers in malt liquor, as provided for by the Act of the General Assembly of Indiana, approved March 6, 1891.

"Section 1. Be it ordained by the common council of Indianapolis, that hereafter every person or persons, firm, corporation or company carrying on a distilling or brewing business within said city of Indianapolis, and all depots or agencies established in said city, of all breweries and distilleries, and all wholesale dealers in malt liquors, except as hereinafter provided, shall, before they are permitted to carry on their said business, pay to the city of Indianapolis, Indiana, for the general use and benefit of said city, the sum of one thousand dollars, which said sum of one thousand ($1,000) dollars shall be the annual city license fee to be charged.

"On payment of said sum of one thousand ($1,000) dollars, the applicant for such license shall present the receipt thereof to the city comptroller of said city, and such comptroller shall thereupon issue to such applicant a license to carry on and conduct such distilling or brew-

ing business, or such depot or agency, or such wholesale dealing in malt liquor, as the case may be, for one year from such time, which license shall be signed by the mayor of said city.

"The terms of this ordinance, however, shall not apply to any resident engaged in the wholesale business of bottling, or bottling and vending bottled beer.

"Section 2. Said city comptroller shall keep a register of the names of every person or persons, firm, company, corporation, depot, agency or dealer receiving from said city such license, with the date when issued and the expiration of the same; for which services a comptroller's fee of one dollar ($1) shall be paid by the person receiving such license.

"Section 3. Any person or persons, firm, company, or corporation carrying on a distilling or brewing business in said city, or the owners or managers of the depots or agencies of any brewing or distilling business, or any wholesale dealer or dealers in malt liquor, who shall violate any of the provisions of this ordinance shall, upon conviction, be fined in any sum not exceeding one hundred dollars ($100), and each day's continuance in violation of this ordinance shall constitute a separate offense.

"Section 4. This ordinance shall take effect and be in force from and after its passage and publication one day each week for two successive weeks in '*The Sun*,' a daily newspaper of general circulation, printed and published in the city of Indianapolis, Marion county, Indiana."

The appellee was arrested and fined in the police court of the city of Indianapolis, for the violation of sections one and three of this ordinance.

On appeal to the Marion Circuit Court there was a finding and judgment for the appellee, from which the city brings this appeal.

From the answer filed by appellee in the circuit court, to which answer a demurrer was overruled, it appears that at the time of the passage and taking effect of said ordinance the appellee was, and still is, the local agent in and for the city of Indianapolis, of the Anheuser-Busch Brewing Association, a corporation located and having its chief office and place of business in the city of St. Louis, in the State of Missouri, and organized under the laws of that State; that for a long time before and since the passage of said ordinance said association has been engaged in the manufacture of beer in the city of St. Louis, and in selling the same to citizens of Indianapolis and other cities and towns in the State of Indiana, said beer being shipped to, and sold by, appellee, partly in barrels, partly in kegs and partly in bottles; that before and since the passage of said ordinance, said association had, and still has, a depot in said city of Indianapolis, in charge of appellee as its local agent, where the beer shipped by said association for the supply of its customers in the city of Indianapolis and other places in the State of Indiana is temporarily stored until the same is disposed of and delivered by appellee to said customers; the said depot has been, and still is, used by said association only as incident to, and as a means of carrying on, its said business of supplying its customers in said city of Indianapolis and elsewhere in the State of Indiana, said depot being provided with facilities for what is called "cold storage," without which said beer could not be kept in good condition until delivered to its customers; that it has heretofore been, and still is, the custom of said association to ship in barrels and kegs and bottles, beer manufactured by it and designed for sale to its customers in Indianapolis and elsewhere in the State of Indiana, to appellee as its agent in said city,

by whom it is then stored in said depot until taken out by him for delivery to said customers, all of the sales so made by him being at wholesale and none at retail.

In addition to the facts so averred, it was agreed on the trial, as shown by the bill of exceptions, that there are three breweries in the city of Indianapolis, all, however, owned and operated by one association, also located in said city; that there are but three persons, or firms, residing in said city who are engaged in bottling and vending bottled beer; that besides the corporation represented by appellee, there are several corporations, firms, and persons who own and control breweries at places outside of Indianapolis, and who are engaged in the business of selling at wholesale the beer manufactured by them to citizens of Indianapolis and of other cities and towns in Indiana, by means of depots, agencies and agents located in the city of Indianapolis; that some of these, including the corporation represented by appellee, are located outside the State of Indiana, while the others are located within the State, but without the city of Indianapolis; that the cost of issuing the license provided for in the ordinance does not exceed two dollars.

On this appeal the appellee contends that the ordinance in question is invalid, and in support of such contention advances the following propositions:

"First. That the ordinance in question is void in so far as it authorizes the taxation or licensing of depots or agencies of nonresident breweries engaged in interstate commerce.

"Second. That the ordinance is void because it makes unjust and illegal discriminations between those engaged in the same business, and tends to create monopolies.

"Third. That the illegal portions of the ordinance are so essential to, and are so intimately connected with,

the general plan of it, as to render the whole ordinance illegal.

"Fourth. That neither the police power nor the taxing power delegated to the city by the city charter act, authorized the city to exact the license fee of $1,000."

As to the first proposition, it is now well settled that the power of congress is supreme over interstate commerce, as well as over foreign commerce; even so far that the failure of Congress to legislate upon the subject does not authorize interference by the State. *Crutcher* v. *Kentucky*, 141 U. S. 47; *Wabash, etc., R. W. Co.* v. *Illinois*, 118 U. S. 557; *Brimmer* v. *Rebman*, 138 U. S. 78.

In *McLaughlin* v. *City of South Bend*, 126 Ind. 471, it was said by this court: "The decisions of the Supreme Court of the United States declare that an ordinance requiring a license fee from agents representing citizens of another State, who offer goods not in this State for sale by sample, is void, because it assumes to establish a regulation affecting commerce between the States. *McCall* v. *California*, 136 U. S. 104; *Stoutenburgh* v. *Hennick*, 129 U. S. 141; *Asher* v. *Texas*, 128 U. S. 129; *Robbins* v. *Shelby County Taxing District*, 120 U. S. 489. * * * If the goods offered for sale had been in this State at the time of the sale, although there was no delivery to the purchaser at that time, the Federal decisions would not, as we believe, rule the case."

It is clear from the authorities, then, that if the goods are located in another State at the time they are sold in this State, the agent so selling the goods can not be required to take out a license. *Robbins* v. *Shelby County Taxing Dist., supra,* and other cases cited above; *Martin* v. *Town of Rosedale,* 130 Ind. 109.

Counsel for appellant, however, contend that while the exclusive authority of Congress over interstate commerce is unquestionable, and while it is also true that

so long as Congress remains silent as to any branch or article of interstate commerce, such silence is an indication of the will of the National Legislature that this branch or article of commerce should remain unrestricted; yet that Congress may, by appropriate legislation, subject any article of interstate commerce to the police regulations of any State.

This contention can not be gainsaid. Congress having exclusive control over the commerce between the States, may undoubtedly subject such commerce to the laws of the States; and the only inquiry must be whether this has in fact been done by Congress by the enactment of a valid law.

Congress has so spoken, and in relation to the particular article concerned in this case. This law of Congress, which was approved August 8, 1890, provides: "That all fermented, distilled, or other intoxicating liquors or liquids transported into any State or territory or remaining therein for use, consumption, sale or storage therein, shall, upon arrival in such State or territory, be subject to the operation and effect of the laws of such State or territory enacted in the exercise of its police powers, to the same extent and in the same manner as though such liquids or liquors had been produced in such State or territory, and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise."

This law was found valid by the Supreme Court of the United States. *In re Rahrer*, 140 U. S. 545; *Commonwealth* v. *Calhane*, 154 Mass. 115.

Beer being a fermented, intoxicating liquor or liquid, it follows that the depots or agencies of nonresident breweries, in which depots or agencies such beer "is temporarily stored until the same is disposed of," are "subject to the operation and effect of the laws" of this

State, "enacted in the exercise of its police powers, to the same extent and in the same manner as though such liquids or liquors" were produced in this State. The question as to interstate commerce is, therefore, eliminated from the case at bar.

The next proposition is, that the ordinance is void because it makes unjust and illegal discriminations between those engaged in the same business, and tends to create monopolies.

It is not necessary to multiply citations of authority to show that an ordinance is invalid which discriminates in favor of residents of the city or State as against nonresidents. Cooley Const. Lim. (6th ed.), 479, and following pages and notes. *Graffty* v. *City of Rushville*, 107 Ind. 502. The ordinance will also be void if it discriminate in favor of some residents as against other residents. 1 Dill. Munic. Corp., sections 322, 327, 362; Cooley Tax., sections 128-9; *Ex parte Frank*, 52 Cal. 606; *Bills* v. *City of Goshen*, 117 Ind. 221; *City of Plymouth* v. *Schultheis*, 135 Ind. 339.

Under this head, objection is made to the following clause of the first section of the ordinance: "The terms of this ordinance, however, shall not apply to any resident engaged in the wholesale business of bottling, or bottling and vending bottled beer."

It is very clear that this clause is invalid for two reasons. It discriminates in favor of residents as against nonresidents. It also discriminates in favor of residents who bottle and vend bottled beer as against residents who vend beer in barrels, jugs, or otherwise. The classification thus attempted to be made is arbitrary, and can not stand. While the subjects of legislation may be, and indeed should be, classified; yet the lines of such classification should be well marked, and should include all individuals of like kind in like situation. Here, the

things to be licensed are breweries, distilleries and their depots and agencies established in the city, with other wholesale dealers in malt liquors. The classification being thus made, and properly so made, it will not do to except individuals of that class who are residents or who do a wholesale business in bottled beer. *State, ex rel.,* v. *Sheriff, etc.,* 48 Minn. 236; *State, ex rel.,* v. *Hammer,* 42 N. J. Law. 435; *Mayer, etc.,* v. *Weed,* 84 Ga. 683.

But, as was said in *Clark* v. *Ellis,* 2 Blackf. 8: ''A part of an act of assembly being unconstitutional, does not affect a constitutional part of the same act relative to the same subject. That part which is unconstitutional, is considered as if stricken out of the act; and if enough remains to be intelligibly acted upon, it is considered as the law of the land.'' This is the law, as recognized in numerous cases. *State* v. *Newton,* 59 Ind. 173; *Ingerman* v. *Noblesville Tp.,* 90 Ind. 393; *State, ex rel.,* v. *Blend,* 121 Ind. 514; 11 Am. and Eng. Encyc. Law. 610.

In the case at bar, by striking from the ordinance the discriminating and void clause, that which is left is complete in itself, sensible and capable of being executed, and wholly independent of that which is rejected.

It is also insisted that the ordinance is discriminating, as favoring a corporation known as the Indianapolis Brewing Company, counsel contending that this company, which owns three breweries in the city, will have to pay but one fee of one thousand dollars, while other wholesale dealers will have to pay one thousand dollars each, and so a monopoly will be created in favor of the city company.

An examination of the ordinance discloses no such meaning in its language. The statute provides for licensing distilleries and breweries and their depots or agencies in the city. The ordinance uses somewhat different language, but the meaning is evidently the same.

The license is required of "every person or persons, firm, corporation or company carrying on a distilling or brewing business within said city of Indianapolis, and all depots or agencies established in said city, of all breweries and distilleries, and all wholesale dealers in malt liquors."

The plain meaning of this language is that each such establishment shall be duly licensed before being authorized to do business. Of course the respective owners are the persons to pay the several fees for the licenses. But each distillery, each brewery, each depot or agency of any such distillery or brewery, and each other wholesale establishment for selling beer, by the provisions of the ordinance, is required to pay the separate fee.

The circumstance that one person or one company owns two or more breweries, depots, or other establishments, could not operate to cancel one or more license fees, leaving the individual or the company to pay but one fee.

As well might it be said that if one man or one corporation should own two or more saloons, such person or corporation would have to pay but one license for all the saloons. It is the saloon, in the one case, and the brewery or other wholesale establishment in the other case, that is licensed; and each saloon or brewery, as the case may be, is taxed a separate license fee.

We quite agree with counsel that the city "has no more authority to require or to give a general license for carrying on the business of brewing, under which a firm or syndicate may carry on a dozen breweries, than it would have to give a general license to carry on the saloon business, under which a firm or syndicate might carry on a dozen saloons." One contention would be as inequitable and absurd as the other. But there is no one but appellee who is seeking to give the ordinance

this interpretation, an interpretation too which the words of the ordinance will not bear. Indeed, the giving of such a meaning to the ordinance seems but the building up of a card house only to show how easily it can be knocked down again,

What we have already said sufficiently answers the third proposition of counsel. We have seen that the illegal parts of the ordinance may be readily separated from those that are legal, so that the latter may stand as a complete and valid ordinance, imposing a license fee on each distillery, brewery, agency or depot of a distillery or brewery, and every other wholesale establishment in the city for the sale of malt liquors.

The fourth proposition of counsel questions the power of the city to levy the tax provided in the ordinance. The power granted to the city by the Legislature, in this regard, is "to tax, license and regulate." It is a police power, and may be delegated by the State to the city. The power of the Legislature to do this can be limited only by the constitution; but there is nothing in the constitution prohibiting the Legislature from extending such power to the city. *Lutz* v. *City of Crawfordsville*, 109 Ind. 466.

Appellee argues that because the cost of issuing a license is small, and because the expense to the city of the regulation of the business is but little, therefore, the tax is for revenue, and not a police regulation. This is to misapprehend wholly the purpose of this class of legislation.

It is said, in *Emerich* v. *City of Indianapolis*, 118 Ind. 279: "Liquor sellers are subjected to the payment of a special tax, because the object of this class of legislation is to restrict the business. * * * The theory of the legislation upon this subject is, that the business is one

The City of Indianapolis *v.* Bieler.

which requires restraint because it is harmful to society.''

It is, as said in *Bright* v. *McCullough, Treas.*, 27 Ind. 223, an indirect tax, ''imposed not merely for the purpose of revenue, but in restraint of a particular business or calling, or as a license on particular pursuits, or as a mere police regulation,'' and so does not come within the spirit of the provisions of the constitution relating to taxation for revenue.

For further authorities to show that all statutes which merely assume to regulate the sale of intoxicating liquors, and to prohibit sales by persons other than those who are licensed by the public authorities, are valid and constitutional, as an exercise of ordinary police regulations, see 11 Am. and Eng. Encyc. of Law, 583, and notes.

What is said by counsel, therefore, and the authorities cited, to show that the ordinance is invalid as an attempted exercise by the city of the taxing power, are not in point. The ordinance is an exercise of the police power expressly granted to the city by the Legislature, in restraint of an occupation which the law regards as harmful to society, and as such it is subject to the discretion of the city authorities.

In *A Coal Float* v. *City of Jeffersonville*, 112 Ind. 15, it is said that ''an ordinance can not be held to be unreasonable which is expressly authorized by the Legislature.'' It follows, from what we have said, that the court erred in overruling the demurrer to the second paragraph of the answer, and also in overruling the motion for a new trial.

The judgment is reversed, with directions to grant a new trial, and for further proceedings in accordance with this opinion.

Filed Mar. 15, 1894; petition for rehearing overruled May 18, 1894.