PABST BREWING CO. v. CITY OF TERRE HAUTE et al.

(Circuit Court, D. Indiana. December 20, 1899.)

No. 9,804.

1. INTERSTATE COMMERCE—STATE LAWS AFFECTING—LICENSE TAX IMPOSED BY CITY.

A city ordinance enacted pursuant to authority conferred by an act of the legislature imposing a license tax of $1,000 per year on each brewery, depot, or agency of a brewery maintained within the city, no provision being made for the supervision, control, or regulation of such breweries, depots, or agencies, as applied to a depot maintained by a brewing associa-

tion of another state solely for the purpose of storing in the original packages beer shipped into the state until its distribution to customers in the same packages, is invalid, as a tax upon interstate commerce. Such ordinance is not an exercise of the police powers of the state, within the terms of the Wilson act (26 Stat. c. 728), which provides that liquors transported into a state upon their arrival therein shall be subject to the operation and effect of the laws of such state enacted in the exercise of its police powers, but is purely a revenue measure, enacted in the exercise of the power of taxation.

2. FEDERAL COURTS—FOLLOWING STATE DECISIONS—QUESTIONS ARISING UNDER FEDERAL CONSTITUTION.

The decision of a supreme court of a state upon the question whether a law imposing a license is enacted under the police power or taxing power of the state is not conclusive upon a federal court when the validity of such law is drawn in question on the ground that it is in conflict with the constitution, laws, or treaties of the United States.[1]

In Equity.

S. R. Hamill and L. D. Swayne, for complainant.
Peter M. Foley, for defendants.

BAKER, District Judge. This is a suit by the complainant, on behalf of itself and certain other breweries named in the bill, for an injunction to restrain the enforcement of a certain ordinance of the city of Terre Haute. The city of Terre Haute is governed by, and possesses the powers conferred upon it by the provisions of, an act of the legislature of this state approved March 3, 1899 (Acts 1899, pp. 270–341, inclusive). Among other powers conferred upon it, are the following:

"The common council shall have power to enact ordinances for the following purposes: * * * Occupations. * * * To tax, license and regulate distilleries and breweries, and the depots or agencies established in said city of all breweries and distilleries, but such license shall not exceed the amount of one thousand dollars for each distillery, brewery, depot or agency established in said city. For the purposes of this section jurisdiction is given such city for four miles from the corporate limits."

Acting upon this authority, the common council of the city of Terre Haute adopted an ordinance providing, among other things, that:

"Every person or persons, firm, association, company, or corporation establishing, conducting, or maintaining in said city, or within four miles of the corporate limits of said city, a brewery or breweries, depot or depots, or agency or agencies of breweries, shall pay to said city the sum of one thousand dollars for each such brewery, depot, or agency so established, conducted, or maintained, which sum of one thousand dollars shall be the annual city license fee to be charged to such breweries, depots, or agencies."

The complainant alleges that it is a corporation organized and existing under the laws of the state of Wisconsin, and a citizen of that state, and that it is, and long has been, engaged in the extensive manufacture and sale of beer or malt liquors, and that its principal place of business is situated in the city of Milwaukee, in said state; that for the 10 years last past it has owned and man-

[1] For state laws as rules of decision in federal courts, see notes to Griffin v. Wheel Co., 9 C. C. A. 548, Wilson v. Perrin, 11 C. C. A. 71, and Hill v. Hite, 29 C. C. A. 553.

aged, and still owns and manages, in the city of Terre Haute, a depot or agency, in which, during all of said time, it has been continuously storing and depositing the product of its manufactory; that in the due and ordinary course of its business at frequent intervals it ships from its manufactory aforesaid to its depot in the city of Terre Haute malt liquors in barrels, kegs, and bottles, which are placed and kept in its said depot until the same are removed therefrom, and delivered to its customers in the states of Indiana and Illinois; that it has no brewery, or plant, or manufactory for the brewing or manufacturing of beer or other malt liquors in said city of Terre Haute; that its business, as conducted and maintained in said city of Terre Haute, consists solely in its maintaining a depot in which it stores the product of its brewery, and in the due course of its business it removes it from said depot, and delivers it in the original packages to its customers; that none of the product sold by it is manufactured or brewed in the state of Indiana, but that all of its product which is stored or handled in the city of Terre Haute is manufactured in Wisconsin, and is there put into barrels, kegs, and bottles, and, when thus put up, it is shipped to and stored in its depot in said city of Terre Haute as originally put up, and the same is thereafter removed therefrom, and delivered to its customers in the same original packages; that, in order for it to transport its product from the state of Wisconsin to the city of Terre Haute, and introduce the same therein, it is necessary to have in said city a depot or agency in which to store its product so shipped, so that it may be thereafter removed therefrom, and delivered to its customers; that its depot or agency is used as a place of storage, and for no other purpose whatever, and in transporting its product from the state of Wisconsin to the city of Terre Haute, and introducing the same therein, in order to preserve its said product fit and proper for consumption, it is necessary for it to have such depot or agency in which to keep such product; that it has for the past 10 years conducted its business as aforesaid, and it desires and intends to so conduct its business in the future. The complainant asks for an injunction restraining the defendants from enforcing said ordinance on the ground that the same is void for various reasons set out in the bill, the principal one being that it is in conflict with the commerce clause of the national constitution.

This state possesses plenary power to regulate and control the custody and sale of intoxicating liquors within its territorial limits, and the character and scope of such regulations depend solely upon the judgment of the lawmaking power of the state, provided they do not transcend the limits of state authority by invading rights secured by the national constitution, and provided, also, that such regulations do not operate as a discrimination against the rights of the residents or citizens of other states engaged in foreign or interstate commerce. The right to transport beer from one state and introduce it into another is interstate commerce, the regulation of which has been committed by the national constitution to the congress, and hence a state law denying such right, or substantially interfering with, or hampering the same, is in conflict with the con-

stitution of the United States. The right to ship beer or other intoxicating liquors from one state into another carries with it the incidental right in the consignee or receiver of such goods to sell the same in the original packages, without regard to state legislation. Such was the undoubted state of the law until after the enactment of the act of congress approved August 8, 1890 (26 Stat. 313, c. 728). This statute reads:

"That all fermented, distilled or other intoxicating liquors or liquids transported into any state or territory, or remaining therein for use, consumption, sale or storage therein, shall, upon arrival in such state or territory, be subject to the operation and effect of the laws of such state or territory enacted in the exercise of its police powers to the same extent, and in the same manner as though such liquid or liquor has been produced in such state or territory, and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise."

The scope and effect of this enactment has been settled by the supreme court in the cases of In re Rahrer, 140 U. S. 545, 11 Sup. Ct. 865, 35 L. Ed. 572, and Rhodes v. Iowa, 170 U. S. 412, 18 Sup. Ct. 664, 42 L. Ed. 1088. The constitutional power of congress to enact the statute in question was upheld, and it was declared to have been the purpose of congress to allow the laws of the state to operate on intoxicating liquors shipped from one state into another, so as to prevent their sale in the original packages in violation of any police law of the state. The police laws of the state, however, do not attach to such liquors while in transit, nor until their receipt and delivery to the consignee or receiver. From the moment of such receipt or delivery, such liquors fall within the police power of the state in the same manner and to the same extent as like liquors of domestic manufacture. The control, by appropriate police regulations, over their place of storage in the state from the time of their delivery belongs to the state, the same as though they were of domestic manufacture. The control and regulation of the depot or agency for the storage of such liquors in their original packages after their delivery at such depot or agency by appropriate police regulations constitute no substantial interference with or hampering of interstate commerce under the above enactment. Whether the depot or agency for the storage of beer, after its delivery at such depot or agency, is owned and controlled by the shipper or by a stranger, would seem to make no difference. The depot or agency for storage is established and maintained for purposes that directly relate to conditions arising after the shipment is completed by the delivery of the goods at such depot or agency. Therefore, when the beer in the original packages is delivered at and placed in the depot or agency, it becomes at once subject to the state police regulation and control, and the depot or agency where it is stored is subject to the regulation and control of the police laws of the state, the same as though such depot or agency were established and maintained for the storage of beer of domestic manufacture. There is no discrimination in the license charged upon a depot or agency for the storage of domestic beer and that for the product of breweries located in other states. Hence the ordinance cannot be adjudged invalid on the ground that it discriminates against the beer

manufactured in other states in favor of beer manufactured in this state.

The controlling question, then, is this: Is the law authorizing the city of Terre Haute by ordinance to impose a license of $1,000 per annum upon a depot or agency for the storage of beer imported from another state while in original packages enacted as a police or a revenue regulation? The right of the shipper of beer to sell the same in the original packages "shall, upon arrival in such state or territory, be subject to the operation and effect of the laws of such state or territory enacted in the exercise of its police powers." Was the statute of this state authorizing the imposition of the license upon depots or agencies for the storage of imported beers in original packages enacted in the exercise of its police power, or under its power of taxation? If under the power of taxation, it would be invalid as to citizens of other states, even though valid as to citizens of this state. In Brennan v. City of Titusville, 153 U. S. 289, 301, 14 Sup. Ct. 832, 38 L. Ed. 719, the supreme court say:

"Because a license may be required in the exercise of the police power it does not follow that every license rests for its validity upon such police power. A statute may legitimately make a license for the privilege of doing a business one means of taxation; and that such was the purpose of this ordinance is obvious, not merely from the fact that in the title it is declared to be for general revenue purposes, but also from the further fact, so far as we are informed by any quotations from or references to any part of the ordinance, there is no provision for any supervision, control, or regulation of any business for which, by the ordinance, a license is required. In other words, so far as this record discloses, this ordinance sought simply to make the various classes of business named therein pay a certain tax for the general revenue of the city."

The court held the ordinance void on the ground that it was enacted under the taxing, and not under the police, power of the state, affirming the doctrine of the case of Ficklen v. District, 145 U. S. 1, 12 Sup. Ct. 810, 36 L. Ed. 601:

"That no state can levy a tax on interstate commerce in any form, whether by way of duties laid on the transportation of subjects of that commerce, or on the receipts derived from that transportation, or on the occupation or business of carrying it on."

The supreme court of this state in City of Indianapolis v. Bieler, 138 Ind. 30, 36 N. E. 857, had under consideration an ordinance from which the ordinance now in question is apparently copied, and held that it was valid as an exercise of the police power of the state. The statute under which the ordinance of the city of Indianapolis was enacted is in the same language as that under which the city of Terre Haute enacted the ordinance now under consideration. But the opinion of neither the lawmaking nor the judicial department of the state is determinative of the question whether or not a license is enacted under the taxing or police power of the state. It is the duty of the national courts, whenever a law of the state or an ordinance of a city is drawn in question on the ground that it is in conflict with the constitution, laws, or treaties of the United States, to determine for itself whether such conflict exists, giving the decisions of the state tribunals such influence only as the persuasive force of their reasoning may entitle them to. The case of the City

of Indianapolis v. Bieler, supra, is not supported by such force of logical reasoning as to persuade me that it is a sound exposition of the law applicable to the subject. The power to tax is distinct from the police power. The purpose of the former is revenue, of the latter is regulation. Any statute or ordinance enacted under the police power of the state must have some relation to the peace, good order, health, morality, or security of the people. It must contain some provision having reference to the supervision, control, or regulation of some act or thing, which may in some way injuriously affect the peace, good order, health, morality, or safety of society. The ordinance in question contains no provision for any supervision, control, or regulation of the business of handling, storing, or selling beer, nor any provision for the supervision, control, or regulation of the depot or agency in which it is stored. Exacting a license from the owner of the depot or agency where beer is stored does not, so far as the court can see, have any necessary relation to the peace, good order, health, morality, or security of society, in the absence of any provision for the control, regulation, or supervision of such depot or agency. In other words, so far as this record discloses, this ordinance seeks simply to make the depot or agency where beer is stored pay a tax for the general revenue of the city, without any attempt to control, regulate, or supervise either the depot or agency, or the custody or sale of the beer. To say that the ordinance, if invalid as against importers of beer having a depot in this state for its storage in original packages on the ground that the license is a tax, operates as a discrimination against the domestic manufacturer of beer, against whom it may be valid, is no argument, because the state is not bound to tax the domestic manufacturer on his depot or agency; and if it does so while having no power to tax the importer on his depot or agency for the storage of beer in original packages, it acts of its own free will, and is itself the author of such discrimination. Robbins v. Taxing Dist., 120 U. S. 489, 7 Sup. Ct. 592, 32 L. Ed. 292. Let a temporary injunction issue pendente lite.