ETTINGER ET AL. *v.* STUDEVENT.

HOLE ET AL. *v.* DICE.

[Nos. 27,644, 27,661.   Filed January 29, 1942.]

*John B. Newlin,* of Crawfordsville, for Leslie R. Hole and others.

*Linder, Seet & Rigot,* of Indianapolis, for Charles R. Ettinger and others.

*Edward H. Knight,* of Indianapolis, *Walter E. Helmke,* of Fort Wayne, *Harry G. Neff,* of Anderson,

and *Raymond O. Evans,* of Crawfordsville, for Paul E. Dice.

*L. Russell Newgent* and *William B. Miller,* both of Indianapolis, for Charles O. Studevent.

*Joseph J. Daniels* and *Floyd J. Mattice,* both of Indianapolis, *amici curiae.*

RICHMAN, J.—These two cases, consolidated for the purpose of oral argument, involve the validity of what is popularly known as the 1941 "Skip Election Law," ch. 86, Acts 1941, § 29-1813, et seq., Burns' 1933 (Supp.), § 11641-1, et seq., Baldwin's Supp. 1941. While the two trial judges reached different conclusions, the arguments are interrelated and one opinion will suffice for both cases.

Prior to 1933 all city elections were held every four years in the year following presidential elections. Chapter 173, Acts 1933, deferred the time of elections to the second year after the presidential election when there is a general statewide election to fill township, county, state and congressional offices. The 1933 Act repealed all prior laws conflicting therewith and provided for the time when city primaries and elections shall be held, and the persons who shall perform the duties necessary to prepare for and hold the election. As a part of this election machinery it was prescribed that county officials should have supervision thereof as a part of the general election.

The 1941 Legislature by the Act here in question specifically repealed the 1933 Act, substituted election machinery supervised by city officials, and provided that city elections in all except cities of the first class (Indianapolis is the only city in that class) should be held in 1943 and each four years thereafter. Obviously if the classification attempted is valid and the repeal of the

1933 Act effective, no law remains fixing the time or providing the mechanics of an election in Indianapolis.

The law originated as House Bill No. 394 and as introduced applied to all cities in the State. A committee to which it was referred amended the first section by inserting language excepting cities of the first class and at the same time added a "separability" section. (See section 6, *infra*.) The Senate made another amendment, immaterial to this discussion, in which the House concurred. Otherwise the act was finally passed in its original form, including the title, which is as follows:

> "An act concerning the holding of elections and primary elections for the election of the elective officers of the several cities of the state, fixing the time for holding such elections and primaries, and the procedure in reference thereto, and repealing laws in conflict therewith."

The first section, with the House Committee's amendment italicized, reads:

> "The time for holding the election of all the elective officers of all cities in this state, *other than cities of the first class* and also in all school cities in the state, *other than school cities of cities of the first class,* in which the boards of school commissioners or boards of school trustees are elected by the vote of the electors of any such city, shall be and the same is hereby changed from the first Tuesday after the first Monday in November, 1942, to the first Tuesday after the first Monday in November, 1943; and thereafter elections for the elective officers of all such cities shall be held on the first Tuesday after the first Monday of November of every fourth year."

Sections 2, 3 and 4 provide the mechanics of nominations and elections. Section 5 repeals all laws in conflict therewith and, as before stated, specifically repeals ch. 173 of the Acts of 1933. Section 6 reads as follows:

"If any one or more sections, sentences, clauses or phrases of this act shall be declared unconstitutional, such decision shall in no sense invalidate any other part of this act."

Cause No. 27644 (see title *supra*) is an appeal from a declaratory judgment of the Marion Circuit Court holding the act unconstitutional *in toto*. The other appeal is from a decree of the Montgomery Circuit Court enjoining the holding of a city election in Crawfordsville in 1942. In this suit the trial court sustained the whole act by disregarding the italicized words in section 1, thus making the law apply to all cities in the state, including Indianapolis.

*Amici curiae* have suggested as an alternative theory the judicial construction of the repealing clause so that it would be effective only as to cities other than the first class leaving intact the 1933 law so far as Indianapolis is concerned. In oral argument a fourth possibility was suggested whereby full effect is given the repealing clause thus leaving Indianapolis without time or method for holding an election. These would have to be supplied by a later General Assembly. The last two suggestions are based upon the major premise that cities may be classified for the purpose of fixing the time of holding an election and the personnel of election officials. This premise is unsound.

Section 22 of Article 4 of the Constitution of Indiana forbids the passage of local or special laws on seventeen specified subjects. Section 23 adds: "In all the cases enumerated in the preceding Section, and in all other cases where a general law can be made applicable, all laws shall be general, and of uniform operation throughout the State." While it has been held that in spite of this strict mandate cities may be classified for some purposes and different laws may be applied to the several classes, the need of separate

treatment to adapt the government to the differing requirements of the various classes has been inherent in the subject matter. Election laws do not require such adaptation. The same reasons suggested for not holding an election in Indianapolis in a so-called "off-year" apply equally to all other cities of the State. If the expense of a separate city election is not justified in Indianapolis, there is no justification for such expense in Columbus, Anderson or Ft. Wayne. Probably it costs no more per capita for an election in a city of 386,972 population than in one of 10,000. Aside from the question of expense, the only other suggested reason for classification is that as to other kinds of legislation cities have been divided into classes on the basis of population. These bases, so far as elections are concerned, are purely arbitrary and capricious. This is made clear by the excellently reasoned opinion in *Wanser* v. *Hoos* (1897), 60 N. J. L. 482, 38 A. 449, which has been cited with approval in *Bullock* v. *Robison* (1911), 176 Ind. 198, 203, 204, 93 N. E. 998, 1000, and *Town of Long View* v. *City of Crawfordsville* (1905), 164 Ind. 117, 122, 73 N. E. 78, 80, 68 L. R. A. 622. See also *Heckler* v. *Conter* (1934), 206 Ind. 376, 187 N. E 878; *People* v. *Board of Election Commissioners* (1906), 221 Ill. 9, 77 N. E. 321; *State, ex rel. Richards* v. *Hammer* (1880), 42 N. J. L. 435, 440; *State ex rel. Wilmot* v. *Buckley* (1899), 60 Ohio St. 273, 54 N. E. 272.

Inasmuch as the attempted classification cannot stand, we are driven to the position taken by one of the two judges whose decisions we are reviewing. Both positions are based upon the invalidity of the attempted classification. Either the act must be construed to apply to all cities of the State or it is void *in toto*. We approach the consideration of these alternatives fully realizing that all reasonable intend-

ments are to be taken in favor of the validity of the legislative act. But we appreciate as well that in order to make that act valid we must not ourselves legislate. If we can ascertain the legislative intent we must give it effect but only to the extent permitted by established principles of statutory construction within constitutional limitations.

Counsel for appellee Dice base their argument on the separability of the clause excluding cities of the first class. By striking it out, the act is left in substantially the form of the original House Bill No. 394. This obviously would have made a valid, sensible, complete, election statute operating uniformly as to time, methods and conditions in all cities of the State in years when such elections would be "free from the variant influences of national, state, county and township issues." Such doubtless was the object of the persons who framed and introduced the bill. But we are concerned not with their intent, which was superseded by the amendment, but with the intent of the General Assembly by which the bill was enacted into law, for "the problem of separability is primarily a problem of determining the legislative intent." *Williams* v. *Standard Oil Co. of Louisiana* (1929), 278 U. S. 235; *Carter* v. *Carter Coal Co.* (1936) ; 298 U. S. 238; *Cashin* v. *State Highway Comm.* (1933), 137 Kan. 744, 22 P. (2d) 939. For that purpose courts have looked to the history of the act, *City of Farmersville* v. *Texas-Louisiana Power Co.* (1932), Tex. Civ. App. 55 S. W. (2d) 195, rev. (1935), Tex. Comm. of App., 67 S. W. (2d) 235; *McFarland* v. *City of Cheyenne* (1935), 48 Wyo. 86, 42 P. (2d) 413; the objectives sought by the Legislature, *Smith* v. *Thompson* (1935), 219 Iowa 888, 258 N. W. 190; the context of the act, *Smith* v. *Thompson, supra;* the title, *Carter* v. *Carter Coal Co., supra,*

*McFarland* v. *Cheyenne, supra;* the preamble, *Carter* v. *Carter Coal Co., supra;* and the existence of an emergency, *Farmersville* v. *Texas-Louisiana Power Co., supra.* And we here look also to the repealing clause, as well as to section 6 providing for separability. Without that section we would sustain the act if the part to be excluded is in fact separable and from the act as a whole we could find that the Legislature so intended. The real purpose of any such section is to evince the legislative intent that the whole act shall not fall because of some separable part that in itself is unconstitutional. But this does not solve the problem of separability.

Looking within the four corners of the act we observe that when the house committee amended the bill and added § 6, it did not amend the title restricting it to cities other than of the first class, nor did it amend the repealing clause to save the provisions of the Act of 1933 for cities of the first class. If both had been done the intent would have been clear that cities of the first class under no circumstances were to be included in the act. But it does not follow that the failure so to do shows a contrary intent. Amendment of the title and repealing section may merely have been overlooked.

It is urged, however, that by the synchronous addition of § 6 the committee pointed to the exception it was inserting and virtually said to the court: What we now insert you may strike out, if you think that is necessary to save any part of the act. If cities of the first class must be included, it is our intent that they shall be. And we purposely have left the title and repealing section in harmony with this intent. Plausible support for the result thus sought to be accomplished is found in numerous quotations from Indiana cases of which

the following from *School Town of Andrews* v. *Heiney* (1912), 178 Ind. 1, 6, 98 N. E. 628, 630, 43 L. R. A. (N. S.) 1023, Ann. Cas. 1915B, 1136 is typical:

"It is an established rule of construction of statutes, that if a construction can be given them which will not render them unconstitutional, that construction will be adopted, even though it may be to eliminate a part of the act, if any portion of the remainder may be disassociated from it as to leave such portion sensible, complete and capable of being executed alike against all similarly situated or affected. *State* v. *Barrett* (1909), 172 Ind. 169, 87 N. E. 7; *State* v. *Lowry* (1906), 166 Ind. 372, 77 N. E. 728, 4 L. R. A. (N. S.) 528, 9 Ann Cas. 350; *Swartz* v. *Board, etc.* (1902), 158 Ind. 141, 63 N E. 31; *Smith* v. *McClain* (1896), 146 Ind. 77, 45 N. E. 41; *City of Indianapolis* v. *Bieler* (1894), 138 Ind. 30, 36 N. E. 857."

We have examined the cases above cited and also the cases referred to therein and find that in none, save one, did the exclusion of the separable and unconstitutional part of the act before the court have the effect of changing the intent of that which remained or of "broadening its scope either as to subject or territory."

The exception referred to is the last case above cited. An ordinance of the City of Indianapolis provided for a $1,000 license fee for all distillers, brewers and wholesale dealers in malt liquors operating in the city. In the same section containing this sweeping provision for license it was provided that it should not apply "to any resident engaged in the wholesale business of bottling, or bottling and vending bottled beer." The court held that this discrimination was invalid, struck out the language excepting residents and wholesale bottlers and upheld the ordinance thus making it apply to the residents and bottlers whom the Legislature had plainly said should be excepted. Several cases are cited as

authority but examination discloses that they also fail on their facts to support the conclusion reached.

In *Hale* v. *McGettigan* (1896), 114 Cal. 112, 120, 45 P. 1049, 1052, an act provided for the election of county officers every four years except as therein provided. One section provided that elections in counties of the 8th class should be held every two years. The court struck out the latter section as an invalid classification leaving the law with provision for elections every four years in all counties including those of the 8th class. The court said:

> "By reason of the constitutional prohibition against the passage of a special or local law upon this subject, any separate act containing the provisions of subdivision 26 of section 170 would have been invalid, and would not have affected the uniformity of the general act. The provisions of this subdivision are none the less unconstitutional when made an integral part of a general act from which they are severable, than they would be if found in an independent act, and, being unconstitutional, may be disregarded as fully as though embodied in a separate statute."

If we read this case correctly it may be distinguished from the instant cases in this: The manifest intent of a very complete law was that every county in the state should have an election every four years but in an ambiguous subdivision of § 170, which the court had to construe, was found the provision that one class of counties should have an additional election between those provided by the remainder of the law. Striking out such provision left these counties with elections in conformity with the remainder of the state. Only the extra election was eliminated by the court's decision. This was separable and its excision did not broaden the scope of the act.

In *Lyman* v. *Martin* (1879), 2 Utah 136, an election law required registration of voters, men and women, and as a prerequisite thereto the filing of an affidavit stating name, residence and other details. In the case of a male voter there was the additional requirement that he be shown by the affidavit to be a taxpayer. The court held that there could be no discrimination between male and female voters, struck out said additional requirement, and sustained the law. The suggested distinction in the California case is not inapplicable to this case. If these distinctions be disregarded the cases are no stronger than *City of Indianapolis* v. *Bieler, supra.*

In *People* v. *Knopf* (1900), 183 Ill. 410, 422, 56 N. E. 155, 159, it was held that a section of a tax law was unconstitutional because of an invalid classification on a population basis. The court said:

"It is urged that the whole law must fail under this rule, because, by striking out the restriction, there is no provision for extending the taxes in counties of 125,000 or more inhabitants. We do not think that is so. The first clause of section 49 is general in its terms and covers all counties in the State, and, with the objectionable provision stricken out, the same rule for extending the taxes applies to all counties in the state."

In *Adams* v. *Standard Oil Co.* (1910), 97 Miss. 879, 53 So. 692, an exemption of Confederate veterans from the provisions of a peddlers' license law was stricken out leaving the law in force as to all peddlers including the veterans. Stress was laid upon the fact that this group represented only a small minority of the persons subject to the license and on this ground the court sought to distinguish the case from *Connolly* v. *Union*

*Sewer Pipe Co.* (1902), 184 U. S. 540. It is apparent, however, that a more important consideration was that the state would lose many thousands of dollars in revenue if the whole law were declared unconstitutional. Courts in other states have held such laws void *in toto.* See *State of Iowa* v. *Garbroski* (1900), 111 Iowa 496, 82 N. W. 959, 56 L. R. A. 570, 82 Am. St. Rep. 524; *State* v. *Shedroi* (1903), 75 Vt. 277, 54 A. 1081, 63 L. R. A. 179, 98 Am. St. Rep. 825.

*State of Iowa* v. *Santee* (1900), 111 Iowa 1, 82 N. W. 445, 53 L. R. A. 763, also lends some support to the view of appellee Dice. It is digested in 1 Lewis' Sutherland, Stat. Constr., (2nd ed.), § 306, p. 597, to which we shall later refer.

This argument and the six decisions, which on their facts sustain the argument, fairly present the case in support of the decree of the Montgomery Circuit Court.

For the other side, however, there is something to be said. We quote the text in 11 Am. Jur., Const. Law, § 161, p. 855:

"One important class of cases in which questions as to the severability of valid and invalid portions of an act and the determination of the legislative intent are involved consists of statutes containing invalid exceptions or provisos. The general rule is that if such a proviso operates to limit the scope of the act in such a manner that by striking out the proviso, the remainder of the statute would have a broader scope either as to subject or territory, then the whole act is invalid, because such extended operation would not be in accordance with the legislative intent."

Numerous cases are cited in support of the text and others will be found in 6 R. C. L., Const. Law, § 127, p. 129.

The first part of § 306, 1 Lewis' Sutherland, *supra,* reads:

"If, by striking out a void exception, proviso or other restrictive clause, the remainder, by reason of its generality, will have a broader scope as to subject or territory, its operation is not in accord with the legislative intent, and the whole would be affected and made void by the invalidity of such part."

The author then quotes from an Ohio case very similar to the case at bar, *State* v. *Buckley, supra,* including the following:

" 'It is urged, however, that if this exception makes the act unconstitutional, the exception should be disregarded, and the act held valid as operating uniformly throughout the state. The answer to this is that the court has no law-making power, and cannot extend a statute over territory from which it is excluded by the general assembly. . . . In the case of an exception, the general assembly never enacted it in the excepted territory, and the court has no power to enact it therein.' "

The author in § 306 further notices *Hale* v. *McGettigan, supra,* and *State* v. *Santee, supra,* as representing a minority view.

A case often cited is *State* v. *Mitchell* (1902), 97 Me. 66, 75, 53 A. 887, 94 Am. St. Rep. 481, from which Judge Parker in *Gramling* v. *Maxwell* (1931), (N. Car., W. D.), 52 F. (2d) 256, 259, quoted as follows:

" 'It may be suggested that, even if the clause cited be unconstitutional, the rest of the statute may not be, and that, the attempted exemption being of no force, all persons, including all those persons described in that clause as well as the defendant, are equally liable to pay the license fees. It is true that in some cases one section or provision of a statute may be held unconstitutional without invalidating the whole statute, but that cannot be done when it would violate the legislative intent. In this case it evidently was the clear intent of the legislature that the persons described in the clause cited should not pay license fees in

any event. That clause is more than a matter of detail. It is an integral part of the statute, and affecting all that part requiring the payment of license fees. To hold that, because of the invalidity of that section, the persons the legislature therein enacted should not pay license fees must nevertheless pay such fees, is to violate a clearly expressed legislative intent; is to impose burdens the legislature explicitly declared should not be imposed.' "

The language quoted earlier in this opinion from *School Town of Andrews* v. *Heiney, supra,* must be applied to the facts then before the court. The question there was one of statutory construction and no problem of separability was involved. But in *State* v. *Barrett* (1909), 172 Ind. 169, 87 N. E. 7, 175 Ind. 112, 93 N. E. 543, 229 U. S. 26, the court did determine that a proviso could not be ignored or excised in arriving at the legislative intent and therefore that the act must stand or fall as written. Having so concluded the court then took up the constitutional question and decided that a classification was valid so that the whole act could be saved. We quote that part of the opinion involving the question of separability: (172 Ind. at p. 175)

"It must be conceded that the act is complete without the proviso, that the latter may be eliminated without impairing or affecting the operation of the act as a whole, that it would still be complete in itself and capable of being executed and of general operation, and, that being true, the act is not open to the objection of being unconstitutional as an entirety, unless it be that the proviso is so intimately connected with the enacting clause as clearly to indicate that it was intended to restrain its operation. We are required as a primary rule of construction to put ourselves in the position of the legislature in the enactment of statutes, and endeavor to arrive at its intention. Provisos and exceptions are similar. They are intended to restrain the enacting clause, to except something

which would otherwise be within it, something engrafted upon a preceding enactment, intended to take special cases out of a general class, and the general intent and purpose of an enacting clause will be controlled by the particular intent subsequently expressed. 1 Bishop, Crim. Proc. (4th ed.), §§ 636-639.

"Taking the enacting clause and the proviso together, what are we to understand that the legislature intended? Clearly that the enacting clause should not apply in any way to 'geological veins of coal numbers three and four commonly known as the lower and upper veins in the block coal fields.' The particular designation of the veins in the block coal fields discloses the reasons operating in the minds of the legislators. The relation of the proviso to the enacting clause and the subject-matter of each must make it quite manifest that the enacting clause was not intended to be operative as to any class of coal mining, unless the block coal fields were not embraced, and we must conclude that the act was intended to be applicable in its entirety, so as to exclude the block fields, or not at all, and the case is reduced to the proposition whether this classification was a proper one, and this question must be determined by the further inquiry whether it operates alike, and is of general operation as to all citizens similarly situated and affected."

We think it may just as safely be said that the enacting clause of the 1941 election law "was not intended to be operative as to any class" of cities unless cities of the first class were not embraced. Must we not also "conclude that the act was intended to be applicable in its entirety," or not at all?

In *State ex rel. Johnson* v. *C. B. & Q. Ry.* (1906), 195 Mo. 228, 248, 249, 250, 93 S. W. 784, 789, 790, 113 Am. St. Rep. 661, the court said:

"In reference to acts of the Legislature, the general rule of law obtains that if the several parts of the act are severable and some are constitutional,

and others unconstitutional, the unconstitutional portions will be adjudged invalid, and the constitutional portions adjudged valid. But this general rule is subject to this qualification, to-wit, that the rule will not apply where it appears that the Legislature would not have passed one part without the other part, which the courts adjudged unconstitutional, had also been a part of the law. In other words, that the law was one general scheme. The question then is, can this court declare the last sentence of the amendment under consideration unconstitutional, and the remaining parts of the amendment constitutional? . . . The framers of the amendment under consideration, therefore, sought to overcome the reasons which have heretofore prevented the passage of somewhat similar schemes, by excepting the cities of St. Louis, Kansas City and St. Joseph from the operation of the amendment, and thus make it a matter of indifference to those cities as to whether or not the tax was imposed on other localities; or it may be, by inducing the vote of those cities to be cast in favor of the amendment and thereby carry the same, when the people of the cities would not be subjected to any burdens in consequence thereof, and when the votes of the people of the county might have been sufficient to defeat the amendment if the votes of the people of those cities, who had no interest in the matter, had not been cast in favor of the amendment.

"It cannot, therefore, be said that the amendment would have been passed even if the exception had not been attached to it, and hence it cannot be said that the exception is unconstitutional and that the body of the amendment is a valid law. The whole amendment must stand or fall together. It has been demonstrated herein that it cannot stand together. Hence, it must all fall. Moreover, the court cannot declare the exception in reference to the three cities unconstitutional, and declare the remainder of the amendment constitutional, because by so doing the court would make the whole amendment applicable to all parts of the State, including the three cities named, and would thereby make an amendment to the Constitution essentially different

from that which the people themselves made or attempted to make. Such is not the province of a court."

We have no means of knowing but that the members of the General Assembly from Indianapolis controlled, in this instance, the votes thereof to such an extent that if that city had been included they could have defeated the bill. An inquiry into this question, however, is not within our province.

We have quoted sufficiently to illustrate the application of the principles above stated. The act before us expresses clearly the intent that it shall not apply to cities of the first class. If we strike out the exception, the law is made to apply to such cities against the express declaration of the Legislature. We cannot say that without the exception the bill would have become law for there is no formula by which we can determine that fact. The separability clause is not enough. It cannot be interpreted to mean that if the presence of a clause or phrase in the act invalidates the legislative intent, the court may change that intent. Even if this were its effect we would have no right under the doctrine of separation of powers to accept such responsibility for that is within the legislative domain.

Where the Legislature attempts to do several things one of which is invalid it may be discarded if the remainder of the act is workable and in no way dependent upon the invalid portion. But if that portion is an integral part of the act and its excision changes the manifest intent of the act by broadening its scope to include subject-matter or territory which was not included therein as enacted, such excision is judicial legislation not statutory construction.

In the six cases mentioned where that result was reached the courts seem not to have appreciated the effect of their decisions. At least the opinions do not disclose any attempt to obviate this objection. Numerically they represent a minority view. The better reason is with the majority.

We accordingly hold that the whole act is in violation of Section 23 of Article 4 of the Constitution and therefore void. In so far as the case of *City of Indianapolis* v. *Bieler, supra,* conflicts with this opinion it is overruled.

The judgment of the Marion Circuit Court is affirmed. The decree of the Montgomery Circuit Court is reversed.

NOTE.—Reported in 38 N. E. (2d) 1000.