# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, MAY TERM, 1886, IN THE SEVENTIETH
YEAR OF THE STATE.

---

No. 13,033.

MILLER, TREASURER, v. THE STATE, EX REL. THE CITY
OF INDIANAPOLIS.

CITY.—*Act Abolishing Office of Treasurer in Certain Cities.*—*Duties Required
of County Treasurer.*—*Monthly Statement.*—*Statute Construed.*—Under the
act of February 21st, 1885, abolishing the office of city treasurer in
cities of over seventy thousand inhabitants, and providing that the
treasurer of the county in which any such city is situated shall perform
the duties previously required of the city treasurer, such county treas-
urer must make and furnish the city clerk the monthly statement
of all his receipts and disbursements on account of the city during
the month, as required of city treasurers by section 3083, R. S. 1881,
showing the balance in his hands belonging to the city funds, from
whatever sources such funds are derived ; and, when required by the city
authorities, he must render to them a full account of his receipts and
disbursements of moneys belonging to the city and the general condi-
tion of its funds in his hands.

From the Marion Superior Court.

(415)

Miller, Treasurer, *v.* The State, *ex rel.* The City of Indianapolis.

*O. B. Hord, A. W. Hendricks, A. Baker, E. Daniels, J. S. Duncan, C. W. Smith* and *J. R. Wilson,* for appellant.
*W. L. Taylor, F. Winter* and *S. J. Peelle,* for appellee.

Howk, C. J.—On the 22d day of February, 1886, appellee's relator, the City of Indianapolis, filed in the clerk's office of the Marion Superior Court its verified complaint, wherein it alleged that it was and for many years had been an incorporated city, organized and existing under the general laws of this State for the incorporation of cities; that on and before the 1st day of January, 1886, appellant Miller was and since had been the duly elected, qualified and acting treasurer of Marion county; that pursuant to law, on such 1st day of January, 1886, the office of treasurer of such city of Indianapolis became and was abolished, and the duties of the theretofore city treasurer were, so far as possible, transferred to the treasurer of Marion county; that on such 1st day of January, 1886, Isaac N. Pattison, as treasurer of such city of Indianapolis, retired from such office, and at the same time, pursuant to law, delivered and turned over to appellant Miller, as such county treasurer, all the funds, bonds, securities, and other property then in his possession, as such city treasurer; that on such last named day, such retiring city treasurer also delivered to appellant, as such county treasurer, and as the successor of such city treasurer, pursuant to law, the tax-duplicate and delinquent tax lists of and for such city of Indianapolis, theretofore duly prepared and certified, for the purpose of having the appellant, as such county treasurer, collect the taxes and penalties thereon, and do whatever else was required of him by law; and that appellant, as such county treasurer, receipted therefor to such retiring city treasurer, which receipt was on the same day filed with the city clerk of such city of Indianapolis.

And appellee's relator further averred that the appellant, as such county treasurer, on such last named day, for and on behalf of such city, proceeded to collect, and had since been

collecting, for such relator, the taxes, penalties and other charges, contained in such city tax-duplicate and delinquent tax lists so received by him, and had on every day since collected thereon large sums of money, for the use and benefit of such city, the exact amount whereof the relator did not know and could not give; that it was the duty of appellant, as such county treasurer, to receive all moneys paid to such city for licenses and special privileges, and credit such city therewith; that among other duties required of appellant, by virtue of his office as treasurer of Marion county, and as the successor in office of such retiring treasurer of the city of Indianapolis, under section 33 of the general law of March 14th, 1867, for the incorporation of cities (section 3083, R. S. 1881), and section 2 of an act entitled "An act concerning taxation for city and school purposes in cities containing a population of over seventy thousand, as shown by the last census of the United States; to abolish the offices of city assessor and city treasurer in such cities, and provide for the discharge of the duties of such offices, and repealing laws in conflict therewith," approved February 21st, 1885, and other laws, was the duty to prepare and deliver to the clerk of such city of Indianapolis, on the last day of each month, a statement of all receipts and disbursements made by appellant, on account of such city, during such month, showing the balance in his hands, as such treasurer, belonging to each fund, general and special, of such city, and to deliver to such city clerk all the city orders, redeemed and cancelled by appellant on account of such city, during the same period, taking the city clerk's receipt therefor.

But appellee's relator averred that appellant Miller, notwithstanding his plain duty in the premises and the great necessity there was for the relator's officers to know the condition of the finances of such city, had failed and refused to make any report to any one, in any manner whatsoever, as to the moneys so collected by appellant, on the tax-duplicate and

delinquent tax lists of such city, and belonging to such re-
lator, either on the last day of January, 1886, or at any prior
or subsequent time, greatly to the injury of such relator;
and that appellant wrongfully refused to make such report,
although requested so to do by resolution, adopted by the com-
mon council and board of aldermen of such city and served
on such appellant by delivering to him a certified copy
thereof. Wherefore, etc.

Appellant voluntarily appeared, and, waiving the issue and
service of an alternative writ of mandate, demurred to the
relator's verified complaint, upon the ground that it did not
state facts sufficient to constitute a cause of action. This de-
murrer was overruled by the court at special term. Appel-
lant excepted to this ruling, and declined to answer over, and
thereupon judgment was rendered at special term awarding
the issue of a peremptory writ of mandate against the appel-
lant, as prayed for in the relator's complaint. On appeal, the
judgment of the court at special term was in all things af-
firmed by the general term, and from the judgment of the
court in general term this appeal is now here prosecuted.

The question for our decision, as it was of the general
term, may be thus stated: Did the court at special term err
in overruling appellant's demurrer to the relator's verified
complaint, and in awarding thereon a peremptory writ of
mandate against him, as prayed for in such complaint?

The city of Indianapolis, the appellee's relator, is and has
been for more than nineteen years past an incorporated city,
organized and existing under the general law of this State
"to provide for the incorporation of cities, prescribing their
powers and rights, and the manner in which they shall exer-
cise the same and to regulate such other matters as properly
pertain thereto," approved March 14th, 1867. Acts of 1867,
pp. 33 *et seq.* Since the approval of such general law, sev-
eral sections thereof have been, at different times, specifically
amended by the General Assembly. In addition to these
amendments, the Legislature has from time to time enacted

other laws, general in form, but, by reason of their provisions, as much local to the city of Indianapolis as if such city had been expressly named therein, which other laws, notwithstanding the positive inhibition of our State Constitution against the passage of "local or special laws," have been upheld by our decisions as constitutional and valid legislation, and must be regarded as amendatory of or supplemental to the general law of this State of March 14th, 1867, "for the incorporation of cities," in so far at least as such city of Indianapolis is concerned. *Groesch* v. *State*, 42 Ind. 547; *Hanlon* v. *Board*, etc., 53 Ind. 123; *McLaughlin* v. *Citizens Building*, etc., *Association*, 62 Ind. 264; *Heanley* v. *State*, 74 Ind. 99.

In section 8 of such general law of March 14th, 1867, as such section was amended by an act approved March 6th, 1877 (section 3043, R. S. 1881), it is provided that the officers of a city, incorporated under such general law, shall consist, among others, of an assessor and treasurer, whose terms of office shall commence on the first Monday in September, following the general election in May, and continue for two years. Section 33 of such general law of March 14th, 1867, for the incorporation of cities (section 3083, R. S. 1881), provides as follows:

"The treasurer shall, on the last day of each month, furnish to the clerk a statement of all the receipts and disbursements made by him during the month, and the balance then in the treasury belonging to each fund, general and special, and also deliver to him all the orders redeemed and cancelled by him during the same period, taking the clerk's receipt therefor; which statement with the orders redeemed, the clerk shall lay before the common council at its next meeting, to be disposed of as the common council may direct. The treasurer shall, at least fifteen days before any annual election, and at all other times when so required by the common council, render a full account of the receipts and expenditures for the current year, and the general condition

of the treasury. He shall also, at his own peril, keep the moneys of the city safely."

Under section 31 of such general law (section 3079, R. S. 1881), the treasurer of any such city "shall receive all moneys, notes, bonds, and orders belonging to the city, and keep an accurate account of the amounts received and paid out by him." In section 32 of such general law (section 3080, R. S. 1881), it is provided that "All moneys due to or collected for such city on any account whatever shall be paid to the city treasurer. * * * He shall receive city orders that are due, in payment of any debt, tax, or assessment due such city; and when an order is received by him for any debt, tax, or assessment due such city, or otherwise paid or redeemed, he shall cancel the same by writing or stamping upon the face of such order, the word 'redeemed' and the date of redemption; and such order shall never again be put in circulation."

By section 1 of "An act in relation to orders issued by cities upon their treasuries, and providing for the presentation, redemption and order of payment of the same," approved March 11th, 1875, and in force since August 24th, 1875 (section 3081, R. S. 1881), it is provided as follows: "The city treasurer shall pay all orders issued by the city of which he is such treasurer, when presented, whether indorsed or not as hereinafter stated in this act, if there be money in the treasury, appropriated for that purpose, sufficient to pay the same; if there be not money enough thus to pay such orders, he shall write or stamp on the back thereof, over his name, the date of such presentation, and note the same 'indorsed,' in a register of orders to be provided him for that purpose; and such orders shall be entitled, thenceforth, to draw legal interest until there shall be money on hand sufficient to pay the same."

In section 2 of the aforesaid act of March 11th, 1875 (section 3082, R. S. 1881), it is further provided, "That city orders shall be received in payment of taxes for general pur-

poses, and for all claims and demands due or belonging to the general fund of the city, without regard to priority of presentation or date of issue; but the treasurer shall not pay any balance thereon, over and above the amount of such tax, claim, or demand, when there are outstanding orders unpaid for want of funds."

By section 4 of "An act regulating the indebtedness of cities having a voting population of over sixteen thousand, as shown by the votes cast for Governor at the last preceding election," etc., approved February 13th, 1877 (section 3123, R. S. 1881), which applies to the city of Indianapolis and to no other city, it is enacted as follows: "No warrant or order for money shall be drawn upon the treasurer of any such city after May 1, 1877, if at the time there be no money in the treasury; and, to that end, it shall be the duty of the city treasurer to keep the clerk, auditor, or other officer authorized to draw orders or warrants, informed when there is no money in the treasury; and, failing to do so, he shall be liable, on his official bond, for the amount of orders or warrants drawn during such failure, with interest thereon, to the person in whose favor such order or warrant was drawn."

Such are some of the provisions of the general law of this State for the incorporation of cities, under which the city of Indianapolis was and is organized, and has its corporate existence, and of the laws since passed amendatory of and supplemental to such general law, which prescribed and defined some of the duties of the treasurer of such city in his relations to the legislative authorities of the city of Indianapolis, before and at the time of the taking effect of the act of February 21st, 1885, mentioned in the relator's verified complaint. That act, as its title clearly indicates, is a general law for local purposes. In terms, the act applies to "all cities containing a population of over seventy thousand, as shown by the last census of the United States;" but, as no other city is shown by such last census to contain the requisite pop-

ulation, such act is, and always will be, in the absence of further legislation, local to the city of Indianapolis.

In the first section of such act it is plainly provided that on and after the expiration of the terms of the incumbents, at the taking effect of the act, of the offices of city assessor and city treasurer, in all cities containing a population of over seventy thousand, as shown by the last census of the United States, "the said offices shall be abolished." The first sentence of section 2 of such act reads as follows: "The treasurer of the county in which any such city is situated, shall thereafter perform all the duties which, by law or the ordinances of such city, were required to be performed by the treasurer thereof, except as herein otherwise provided, in the same manner and with like effect as such duties were required to be performed by such city treasurer."

In the relator's verified complaint, the substance of which we have heretofore given in this opinion, it is claimed that, under and by force of the provisions last quoted of section 2 of the above entitled act of February 21st, 1885, and of section 3083, R. S. 1881, heretofore quoted herein, it became and was the duty of the appellant, as treasurer of the county of Marion, wherein such city of Indianapolis is situate, to prepare and furnish to the clerk of such city, on the last day of each month, a statement of all receipts and disbursements made by such treasurer, on account of such city, during such month, showing the balance in his hands as such treasurer belonging to each fund, general and special, of such city, and to deliver to such city clerk all the city orders redeemed and cancelled by him, on account of such city, during the same period, taking therefor the city clerk's receipt.

On the other hand, while conceding that appellant as county treasurer is required by law to furnish the city clerk, on the last day of each month, a statement of all receipts from sources other than taxes and disbursements thereof, made by him, on account of such city, during the month, showing the balance in his hands, etc., his counsel contend very earnestly, as we

understand them, that under and by force of the provisions of the aforesaid act of February 21st, 1885, and especially of section 14 of such act, he is not required to include in such monthly statement his receipts of city taxes, current or delinquent, during the month, or to make any disbursements out of his receipts of such city taxes, on account of such city, until after making his annual settlement with the county auditor, on the third Monday of April.  In such section 14 it is provided, in substance, that, immediately upon such settlement being made, the auditor shall make a statement showing the aggregate amounts, separately, of all current and delinquent taxes for city purposes, including with the delinquent taxes the penalties and interest thereon, which appear upon the tax duplicate for such city, the amount of each class of such taxes, penalty and interest, that remains uncollected at the time of such settlement, and the amount of each class, including penalty and interest, that has been collected by such treasurer; and that a copy of such statement shall be delivered by the county auditor to the city clerk of such city, who shall thereupon charge the amount, shown thereby to have been collected, to such "county treasurer as cash in his hands."

There is much force and plausibility in the contention and argument of appellant's counsel, but we are not inclined to adopt their construction of the provisions of the aforesaid act of February 21st, 1885.  The primary and fundamental question in the construction of all statutory provisions is this: What did the Legislature intend in the enactment of the statute?  In *Clare* v. *State,* 68 Ind. 17, the court said: " The true rule is, and always has been, as recognized in many decisions of this court, to make the legislative intention in the enactment of the particular statute, the chief guide of the court in its interpretation and construction.  If the object, purpose and intention of the Legislature, in the enactment of the particular statute, can be fairly ascertained and arrived at, then it is the duty of the court, * * * * if possible, to

give force and effect to the evident reason, spirit and intention of the law. * * * * It has been well said that it is the duty of courts to execute all laws according to their true intent and meaning; and that intent, when collected from the whole and every part of a statute, must prevail even over the literal import of terms, and control the strict letter of the law, when the latter would lead to possible injustice and contradictions."

The main purpose of the above entitled act of February 21st, 1885, as is apparent from its provisions, was to diminish the expenses of assessing and collecting municipal taxes, in our largest and most populous city, by abolishing unnecessary offices. But surely it never was the intention of the Legislature to put the municipal taxes, when collected, out of the reach of the proper city authorities, or to make the city, with its own money in the hands of the county treasurer, a borrower of the funds needed to maintain its fire department, or for police or sanitary purposes, or to repair or cleanse its streets and alleys, until such treasurer shall have his annual settlement with the county auditor. The Legislature never contemplated any such results as these, we are well assured, in the enactment of the statute; and to give the act the construction contended for by appellant's counsel, would obstruct the improvement of the city and lead not only to possible but to actual injustice. Such a construction of the act is to be avoided, and, we think, is not required by any of its provisions.

It is said, however, that upon the annual settlement of the county treasurer with the county auditor, the statute provides that the city clerk, upon being furnished by such auditor with a statement of the amount of city taxes, penalty and interest,. that have been collected by such treasurer, shall charge the amount to the county treasurer "as cash in his hands." That is true. That is the debit side of the county treasurer's account, we may suppose, on the books of the city. The law is silent in regard to the credits which such county treasurer

shall receive, on the credit side of such account; but, doubtless, he will get proper credits on such account for the amount of all city orders, redeemed and cancelled by him on account of city taxes, or with the moneys received by him for such taxes. So that, at the same time he is charged by the city clerk with the amount of city taxes collected by him, "as cash in his hands," he may possibly be prepared to balance such account by proper credits for disbursements made by him in the redemption and cancellation of city orders, out of moneys collected by him for city taxes.

With respect to the relation of the county treasurer to the city authorities, in the discharge of the duties of such treasurer under the aforesaid act of February 21st, 1885, we are of opinion that the first sentence, above quoted, of section 2 of such act, clearly enjoins upon and requires of him the performance of the same duties theretofore performed by the city treasurer, under the law or ordinances of such city, "in the same manner and with like effect," as such city treasurer had been previously required to perform such duties. He must make and furnish the city clerk the monthly statement of all his receipts and disbursements, on account of the city, during the month, as required of city treasurers by section 3083, *supra,* showing the balance then in his hands as county treasurer, belonging to the city funds, from whatever sources such funds may be derived; and when so required by the proper city authorities, he must render to them a full account of his receipts and disbursements of moneys belonging to the city, and the general condition of the funds of such city, in his hands as county treasurer.

We conclude, therefore, that the court at special term committed no error in overruling the appellant's demurrer to the relator's verified complaint, or in awarding a peremptory writ of mandate, as prayed for in such complaint.

The judgment is affirmed, with costs.

Filed May 24, 1886.