STATE EX REL. 1625 EAST WASHINGTON REALTY CO. v. MARKEY, JUDGE.

[No. 26,846.  Filed April 30, 1937.]

*Carl E. Stillwell,* for appellant.

*Samuel J. Mantel,* and *C. Severin Buschmann,* for appellee.

HUGHES, J.—It appears that on the 19th day of March, 1937, one Mildred B. Pearson filed her complaint for a judgment in the sum of $150.00 upon a preferred stock certificate and for the appointment of a receiver, in the Superior Court of Marion County, Room 1, Cause No. A-92806. That thereafter on the 22nd day of March 1937, the relator herein filed with the Clerk of the Superior Court of Marion County, Indiana, its affidavit for change of judge on account of the bias and prejudice of said judge and objecting to the Honorable Joseph T. Markey, Judge from whom the change of venue was taken, himself selecting the judge or submitting a list of names from whom a judge may be. selected to try the case, all pursuant to chapters 85 and 290 of the General Assembly of 1937.

On the 22nd day of March, 1937, the Honorable Joseph T. Markey, as judge of said court, made and signed the following order:

> "Comes now the Court and it having been called to the attention of the Court that an affidavit for change of venue from the judge has been filed herein pursuant to sec. 1, chapter 85 of the Acts of the General Assembly of Indiana, for the year 1937;

"And the Court having examined said affidavit and being cognizant of the fact that a question has been raised in the Supreme Court of this State as to the validity and constitutionality of this Act, the Court now finds that the Clerk of this Court should be directed and ordered to not certify such affidavit or facts to the Clerk of the Supreme Court until further order of this Court."

On the 29th day of March, 1937, the relator filed in this court, a petition for a writ of prohibition to be issued against Superior Court of Marion County, Room 1, and Joseph T. Markey as judge of said court, to restrain them from making any further orders in said cause and from enforcing the provisions of the order heretofore made. A temporary writ of prohibition was issued and a response has been filed by the Honorable Joseph T. Markey as judge of said court.

It appears that the affidavit for a change of judge filed by the relator Realty Company, was in proper form and sufficient as provided for in chapters 85 and 290 of the General Assembly of 1937. The first part of the affidavit went to the bias and prejudice of the judge as provided for in chapter 290, and the latter part went to the objection of the judge, himself selecting a judge or submitting a list from which to select a judge, as provided for in chapter 85.

The affidavit for the change of judge was executed by Samuel H. Creighton, as secretary-treasurer of the realty company. Some contention is made that he had no authority to execute the affidavit. We think there is no merit to this contention and cite the case of *Fidelity Co.* v. *Carroll* (1917), 186 Ind. 633, 636, 117 N. E. 867, where it is said:

". . . the affidavit (for a change of venue) required by the statute must be made by an executive or administrative officer of the corporation, such as the president, vice-president, secretary or treasurer and not by an agent or attorney."

It is further contended that chapter 85 does not apply to civil cases and that there are no provisions in said Act relating to the method of submitting a list of persons to act as judges in civil cases or in selecting a judge from said list.

It must be conceded that said chapter applies to criminal cases and we think it also applies to civil cases. The title of the Act contained in chapter 85 is as follows:

"An Act concerning proceedings in criminal or civil cases and to secure the impartial selection of judges in criminal or civil cases, and declaring an emergency."

It can not be questioned that the title is broad enough to cover both criminal and civil cases. It expressly includes both. The first part of section 1 includes both civil and criminal cases. It says:

"That if the prosecuting attorney or plaintiff or the defendant in any criminal or civil cases shall include in his affidavit . . . ."

It later uses the language:

". . . it shall be the duty of the clerk of said court where said criminal cases is pending. . . ."

Clearly there is an omission of the word "civil" in connection with the word "criminal." In two other places in the body of the Act, the phrase "criminal case pending" is used, but it can not be doubted that the word "civil" was intended to be used in connection with the word "criminal," thus making the Act apply to civil or criminal cases as provided for in the title of the Act, and in other parts of the Act. Other language of the Act uses the language:

". . .or a member of the bar of the county where said action is pending,"

which applies to either a civil or criminal action.

We concede that the Act is not drawn in concise lan-

guage and it is inexcusable on the part of the members of the legislature to permit an Act to be worded in such a confused manner when plain language could have been used, so that there would have been no doubt of its meaning. It is our duty, however, to construe the Act and determine if we can its meaning. As said in the case of *State* v. *Street Ry. Co.* (1898), 146 Mo. 155, 167, 47 S. W. 959:

> "A statute can not be held void for uncertainty, if any reasonable and practical construction can be given to its language. Mere difficulty in ascertaining its meaning or the fact that it is susceptible of different interpretations will not render it nugatory. Doubts as to its proper construction will not justify us in disregarding it. It is the bounden duty of the courts to endeavor by every rule of construction to ascertain the meaning of, and to give full force and effect to every enactment of the General Assembly not obnoxious to constitutional prohibitions."

In construing an Act, we must look both to the title and the body of the Act. We think the title of the act, when considered with the body, gives a clear idea of the intention of the legislature. As said in *Steiert* v. *Coulter* (1913), 54 Ind. App. 643, 652, 102 N. E. 113, 103 N. E. 117:

> "If the meaning of an act is doubtful, the title if expressive, may serve the purpose of removing the doubt either by extending the purview of the body of the act or by restraining or limiting it to the evident intention of the legislature."

There can be no question here that the title is expressive. It is clear that it meant the act to apply to both civil and criminal cases. To hold that it is not applicable to civil cases, would contradict the evident intent of the legislature and if two constructions are possible, that one should be adopted which makes effectual, rather than one which defeats the purpose of the act. *Steiert* v. *Coulter, supra.*

The case of *Feigel* v. *State* (1882), 85 Ind. 580, presents a rule of construction of statutes, which is applicable here. The title of the Act considered in that case was: "An Act concerning proceedings in civil cases." It was enacted by the General Assembly of 1881 and Section 261 provided:

"If during any session of court, by reason of death, sickness, or other casualty, any judge shall be prevented from presiding, so that the court will lapse; and if at any term of court the judge shall fail to attend, or during the term shall fail to appear for any period of three days,—the sheriff may adjourn the court from day to day. And on failure to so appear during the term, the clerk, sheriff, and auditor (and in case of the absence of either, either two, with the recorder of the county) may elect any competent and reputable attorney to act as judge; who, if he accept, shall qualify as other judges, and his appointment, with the reason therefor, and his oath shall be spread on the order-book. And such judge, so selected, may preside until the return of the regular judge, or in case of death, until his successor be named. And in any case of vacancy during term, or if the judge be required to be absent during term, such appointment may be made until a successor shall be named by the proper authority."

The court said in *Feigel* v. *State supra,* p. 583:

"It will readily be seen that this section is broad enough in its provisions to cover the case now under consideration. The record of this case shows that, during the April session, 1882, of the court, the regular judge thereof was prevented, by reason of sickness, from presiding therein; that, on account of his sickness, the judge failed to appear for the purpose of holding court during that term, for a certain period of three days; and that, during that period of three days, the sheriff had adjourned the court from day to day. It was further shown that, after such failure of the judge to appear during the term for such period of three days, the clerk, sheriff and auditor of the county appointed Judge O'Rourke to act as judge of the court. His appointment was surely legal and valid; therefore, unless it can be

correctly said that the section of the statute is not applicable to the appointment of a judge of a criminal court. This is the precise point which the appellant's learned counsel has presented and insisted upon, with much earnestness, in his elaborate brief of this cause. . . . It is argued that it is clear from the title of the act, that the section of the act can only have reference to the judges of civil courts, and can not be construed as providing for the appointment of judges of criminal courts. This argument seems to us specious and unsound. It proves too much. It means, if carried to its logical result, that an appointed judge of a circuit court could only hold the court for the trial of strictly civil cases; and this, certainly, was not the intention of the Legislature in the enactment of the section quoted. On the contrary, we think it was the intention of the law-making power to provide, in this section, that no court should lapse by reason of the absence of the regular judge, and that the appointed judge should have power to hold the court for the trial of all causes, criminal as well as civil, pending therein.

"In all counties of this State, except Allen and Marion, the circuit court has jurisdiction of criminal as well as civil cases; and it is clear, we think, that the appointed judge of any such court could hold the same for the trial of any cause pending therein. It can not be that the Legislature intended to provide that appointed judges should have power to hold courts merely for the trial of civil cases, and not of criminal causes. On the contrary, it must be held that the legislative intent is shown in the language of the section quoted, that no court should lapse by reason of the non-attendance or non-appearance of the regular judge of the court. In this respect the provisions of the act are broad enough to embrace all courts, both criminal and civil; and we are not required to limit the plain language of the section quoted by judicial construction. Indeed, we think that public interests will be subserved by a liberal construction of the section quoted."

It is also said in 25 R. C. L. Sec. 227, p. 978 that:

"Legislative enactments are not more than any other writings to be defeated on account of mis-

takes, errors or omissions, provided the intention of the legislature can be collected from the whole statute. Where one word has been erroneously used for another, or a word omitted, and the context affords the means of correction, the proper word will be deemed substituted or supplied. This is but making the strict letter of the statute yield to the obvious intent." 25 R. C. L. Sec. 227, p. 978; *Gustavel* v. *State* (1899), 153 Ind. 613, 54 N. E. 123.

As said in the case of *State* v. *Brodigan* (1914), 37 Nev. 245, 141 Pac. 988:

"Where, from a reading of the entire act, certain words necessary to give it complete sense have manifestly been omitted, courts, under well-established rules of construction, are permitted to read the same into the act in order that the law may express the true legislative intent."

Considering the foregoing rules of construction, we are of the opinion that it was the intent of the legislature to include the words "or civil" in all places in the act where "criminal" cases are referred to and to include "the plaintiff" in all places where "prosecuting attorney and the defendant or defendants" are referred to. Such a construction carries out the clear intent of the legislature as expressed in the title.

It is further contended by respondent that chapter 85 purports to apply only to cases in which a change of venue is now allowable by law, and the said realty company, prior to the adoption of said Act, was not entitled to a change of venue on an application for the appointment of a receiver. The case of *Stair* v. *Meissel* (1934), 207 Ind. 280, 192 N. E. 453, decides this proposition adversely to the contention of respondent.

It is also insisted by respondent that even if said Act be held to apply to civil cases, then said Act is unconstitutional in that it violates Art. 3, Sec. 1, of the Constitution of Indiana, in that the legislature has attempted to delegate judicial power to an administra-

tive officer, namely, the Clerk of the Supreme Court, to select, subject to the direction of the Supreme Court, three competent disinterested persons from whom a judge will be chosen.

The foregoing contention of appellant was discussed and decided adversely to respondent in the case of *State ex rel. Herbert M. Spencer as Prosecuting Attorney* v. *Marion Circuit Court, Earl R. Cox, as Judge,* No. 26,845, decided by this court on April 30, 1937.

The temporary writ heretofore issued is made permanent.