GRAVE *v.* KITTLE ET AL.

[No. 18,184.  Filed November 28, 1951.  Rehearing denied January 18, 1952.  Transfer denied March 13, 1952.]

*Stevenson & Kendall,* of Danville, *Kivett & Kivett,* of Indianapolis, for appellant.

*George W. Hadley* and *Otis E. Gulley,* both of Danville, for appellees.

ACHOR, J.—This was an action filed by the appellant to resist the probate and contest the purported will of John L. Grave, deceased. The will was executed April 16, 1941, when John L. Grave was a married man. His then wife died, leaving no children and afterwards the said John L. Grave married this appellant, with whom he lived at the time of his death.

Item 3 of the said will provided "In the event that my said wife, Ila L. Grave, shall not survive me, then I give, devise and bequeath all of my estate, real and personal, to Frank L. Kittle, who my wife and I have raised."

The only question involved is whether or not the marriage of said John L. Grave to the appellant revoked the will which he had executed before said marriage and during his marriage with his former wife, Ila L. Grave. It was found and judgment was decreed by the trial court that said purported will of said John L. Grave "is the last will and testament of John L. Grave, deceased" and the same was ordered admitted to probate. It is from this judgment that Maude Grave, widow of John L. Grave, deceased, and administratrix of his estate has appealed.

The only question presented by this appeal is whether or not it was the intention of the legislature by Chapter 309 of the Acts of 1913, page 838 to render null and void a will made by either a male or a female who after-

wards becomes married. In other words, does marriage void all wills made before the marriage regardless of testator's married or unmarried status at the time the will was executed? The act in question, including the title, reads as follows:

"AN ACT providing that wills executed by males or females before marriage and who afterwards become married shall be null and void.

"SECTION 1. *Be it enacted by the general assembly of the State of Indiana,* That if any male or female who now under the law is qualified to execute a will and who, being unmarried, shall execute a will disposing of his or her property or any porton of the same, and who, after the execution of such will, shall become married, then such will executed prior to such marriage shall be null and void."

It is contended by appellant that the act is ambiguous and that the construction placed on the statute by the court below which upheld the validity of the will, the subsequent marriage of the decedent notwithstanding, would result in a violation of the confidential relationship between husband and wife and as such would constitute constructive fraud and be contrary to public policy; that a literal and strict construction of the statute, as urged by appellee, would lead to injustice not intended by the legislature. The law on this subject is ably stated in the case of *Stout* v. *The Board of Commissioners* (1886), 107 Ind. 343, 347, 8 N. E. 222. In that case the court said:

"It is also true that the courts can not extend the plain meaning of a statute by the substitution, or addition, of words or phrases, without encroaching upon the legislative department of the government. *Trustees, etc.,* v. *Ellis,* 38 Ind. 3. But the legislative intention, as collected from an examination of the whole,

as well as the separate parts, of a statute, will prevail over the literal import of particular terms, and will control the strict letter of the statute, where an adherence to such strict letter would lead to injustice, to absurdity, or to contradictory provisions. *Mayor, etc.,* v. *Weems,* 5 Ind. 547; Buskirk Pr. 353; *Middleton* v. *Greeson,* 106 Ind. 18; *Miller* v. *State, ex rel.,* 106 Ind. 415."

Appellant contends that the act should be construed to provide that all wills are made void by subsequent marriage, and that such legislative intent is made clear by two circumstances; (1) by the title to the act; (2) by the fact that classification, as asked by appellee, would be wholly arbitrary and without reason and, therefore, unconstitutional; that it must be assumed that the legislature did not intend the act to be so construed as to make it unconstitutional and, if it is susceptible to a construction which would make it constitutional, it should be so construed.

The following cases for the above propositions are cited by appellant: In *State ex rel. Robertson* v. *Circuit Court of Lake Co.* (1938), 215 Ind. 18, 29, 17 N. E. 2d 805, the court said: "In construing statutes, the courts will seek a construction that avoids unconstitutionality." And in *State ex rel.* v. *Markey, Judge* (1937), 212 Ind. 59, 63, 7 N. E. 2d 989, the court said: "In construing an Act, we must look both to the title and the body of the Act. We think the title of the act, when considered with the body, gives a clear idea of the intention of the legislature . . ." See also *McNamara* v. *State* (1932), 203 Ind. 596, 601, 181 N. E. 512; *Garrigus et al.* v. *The Board of Commissioners of Parke County* (1872), 39 Ind. 66.

After examining the title of the act, we cannot say that its language serves either to clarify or restrict the

language of the act itself. It describes the act as being applicable to "wills executed before marriage." By the terms of the title, it would appear that to make the will void two circumstances must exist; (1) the will must have been executed before marriage; (2) the testator must "afterward become married." By reasonable construction, the first limitation might refer to both (a) the time of execution, and (b) the *status* of testator at the time of execution.

In point of time, the will in controversy was "executed before marriage" of testator to appellant although, as regarding testator's marital status, it was not "executed before marriage." Although testator "afterward became married," we cannot say that the title to the act requires a judicial construction different from the literal wording of the act which reads "who, being unmarried, shall execute a will."

The undisputed facts are that John L. Grave executed the will in question at a time when he was a married man; that his wife died and afterwards he became married to the appellant. If said second marriage revoked said will, the judgment in this cause must be reversed, otherwise the judgment should be affirmed.

We now consider appellant's second point of contention: Does the statute as construed by the court below establish a wholly unreasonable and arbitrary classification as between the wills of persons who, after the execution thereof, "shall become married,"—the sole difference in the respective classes of such wills being the married status or unmarried status of testator at the time of the execution thereof.

Is the testamentary position of one who executes a will while married but later becomes unmarried and subsequently marries, different from the position of a person who, "being unmarried," executes a will and

thereafter marries a second or subsequent time? Without weighing the wisdom of such a classification, it is apparent that some basis of classification does exist. One who is married may be expected to have children, who are the natural subjects of his bounty and for whom society imposes a responsibility for care and support. In the normal course of human conduct, it is anticipated that a father or mother make provision by will for these children against the uncertainties of the future—even as against marriage to a subsequent husband or wife. The same personal and social responsibilities cannot be said to exist with regard to unmarried persons as a class.

Therefore, we cannot say that the classification urged by appellee and supported by the trial court is wholly arbitrary and without reason so as to make the act unconstitutional and to create a presumption that the Legislature intended a different construction.

A legislative classification must be upheld if any state of facts can be conceived that would sustain it. *Baldwin* v. *State* (1923), 194 Ind. 303, 307-308, 141 N. E. 343; *In re Walter's Estate* (1940), 60 Nev. 172, 104 P. 2d 968, 973.

In support of the ruling of the trial court, the appellee cites the legislative and judicial history, which preceded the act now in controversy. Prior to the enactment of this statute, a will made by an unmarried female was revoked by marriage under an 1852 statute providing: "After the making of a will by an unmarried woman, if she shall marry, such will shall be deemed revoked by such marriage." (§5, ch. 11, 2 R. S. 1852.) But the mere marriage of a male did not revoke his previously made will. *Bowers et al.* v. *Bowers* (1876), 53 Ind. 430. The Legislature, by Chapter 309 of the Acts of 1913, *supra*, not only caused the act of marriage to continue

to revoke a will theretofore executed by an unmarried female as the law had done before, but also to revoke a will previously executed by an unmarried male.

Insofar as we can ascertain, this statute has never been reviewed by our higher courts, but the former statute of 1852, respecting wills made by females, heretofore quoted, was construed with respect to the effect of a subsequent marriage, on a will made by a woman while she was married in the case of *Hibberd* v. *Trask et al.* (1903), 160 Ind. 498, 67 N. E. 179. The facts in that case were that Anna L. Bickle made a valid will at a time when she was the lawful wife of one William A. Bickle. Thereafter she and William A. Bickle were divorced. Afterwards they were again married. Such will remained in force until her death. It was contended by appellant in that case that her will made under such facts was revoked by operation of §5, ch. 11, 2 R. S. 1852, *supra*. In holding that such will was not revoked under the circumstances by her subsequent marriage, the court stated at page 504:

> "The whole subject of the right to make a will, the mode of its execution and attestation, and the manner in which it may be revoked, are matters of statutory regulation. The legislature has the power to designate the class of persons who may make a will, and to declare what changes in the personal status of such persons after its execution shall operate as a revocation of the will. In this State married women have been declared competent to make wills, and only in the case of a will executed by a woman who was unmarried at the time of making it, is it provided that a subsequent marriage shall operate to revoke it. As Mrs. Anna L. Bickle was not an unmarried woman when she made the will of April 4, 1865, by which she devised all her estate to the appellee, Irene W. Trask, her subsequent marriage to

William A. Bickle can not be deemed to have revoked the will so made."

And at pages 501-503:

"In this State, by virtue of the statute, all persons except infants and persons of unsound mind are made competent to devise by last will and testament any interest descendible to their heirs which they may have in any lands, tenements, hereditaments, or personal property. . . The class of persons whose wills are deemed to be revoked by subsequent marriage under this section (Section 5, Chapter 11, R. S. 1852) are women who have made wills while unmarried. This provision, being in derogation of the general power to make wills conferred by statute, and in the nature of an exception thereto, is to be strictly construed. . . .

"It will be observed that the language of the statute is that after the making of a will by an unmarried woman, if she shall marry, it shall be deemed revoked by such marriage. There is no reason why the courts, in giving a construction to this section, should change its evident meaning, or interpolate words not found within it. . . .

"The methods by which wills may be revoked are distinctly stated in the statute of wills of this state, . . . The second or subsequent marriage of a woman who, while married, had previously made a will, is nowhere made to operate as a revocation of such will. If the legislature had intended the marriage of a woman who, while married, had made a will, to operate to revoke it, it would have said so."

When it enacted the statute in question, it must be presumed that the legislature was familiar with and had in mind the prior statute concerning revocation of wills by marriage made by unmarried women (§5, ch. 11, R. S. 1852, *supra*), and the construction accorded to it in *Hibberd* v. *Trask, supra,*

and also the fact that under the common law and in this state the mere marriage of a man did not revoke his previously made will. *Bowers et al.* v. *Bowers* (1876), 53 Ind. 430.

The legislature is presumed to have had former statutes dealing with the same subject before it and to have been acquainted with their judicial construction and passed new statutes on the same subject with reference thereto. *State* v. *Gerhardt* (1896), 145 Ind. 439, 460, 44 N. E. 469. "When a statute, or a part of a statute, has been construed by the court of last resort in the State, and the same is substantially reenacted, the legislature adopts such construction, unless the contrary is clearly shown by the act." *Cronin* v. *Zimmerman* (1907), 169 Ind. 75, 76, 81 N. E. 1083.

While there appears to be no cases construing Chapter 309 of the Acts of 1913, *supra,* there further appears to be no reason why this statute as it applies to wills of males should not receive the same construction as given in *Hibberd* v. *Trask, supra,* to said Section 5, Chapter 11, R. S. 1852, *supra,* in its application to wills executed by "unmarried women" who subsequently marry.

We find no judicial basis for disturbing the literal construction of the act as written and enacted by the legislature. It is not within the province of this court to weigh the expediency or wisdom of the statute. That is an issue lodged wholly within the discretion of the legislature. *State* v. *Gerhardt, supra.*

Judgment affirmed.

Martin, C. J., dissents.

## DISSENTING OPINION

MARTIN, J.—I cannot agree with the results of the majority opinion. I can agree that the only question in this appeal is the proper construction of Chapter 309 of the Acts of the General Assembly, approved March 15, 1913, and that this Act has not been construed by the higher courts of this state.

The legislature, in writing this law covering the subject of revocation of wills by subsequent marriage, divided wills into two classes, those which were executed by persons while they were married, and those executed by persons while they were unmarried. This law grants to persons who were married when they executed a will privileges and immunities which are not granted to that class of persons who were unmarried at the time they executed a will.

In the case of *Fountain Park Co.* v. *Hensler* (1927), 199 Ind. 95, 101, 155 N. E. 465, the court said:

"The question of classification is primarily for the legislature and does not become a judicial question unless it clearly appears that the legislative classification is not based on substantial distinctions with reference to the subject-matter, or is manifestly unjust or unreasonable. *Denny* v. *City of Muncie* (1925), 197 Ind. 28, 149 N. E. 639; *Koplovitz* v. *Jensen* (1926), 197 Ind. 475, 151 N. E. 390; *Maercker* v. *Milwaukee, etc., R. Co.* (1912), 151 Wis. 324, 139 N. W. 199.

"In determining the legality of classification, the subject to be regulated, the character, extent and purpose of the regulation, the classes of persons or corporations legally and naturally affected by the regulation should all be considered. One of the essential requirements in order that the classification may not violate the constitutional guaranty as to equal protection of the laws, is that it must be reasonable and natural and not capricious or arbitrary. 12 C. J. 1128-1130; 6 R. C. L. 373-386, and cases cited.

"The law requires something more than a mere designation of characteristics which will serve to divide into groups. Arbitrary selection or mere identification cannot be justified by calling it classification. *Gulf, etc., R. Co.* v. *Ellis* (1896), 165 U. S. 150, 17 Sup. Ct. 255, 41 L. Ed. 666; *Rosencranz* v. *City of Evansville* (1924), 194 Ind. 499, 143 N. E. 593; *McKinster* v. *Sager* (1904), 163 Ind. 671, 72 N. E. 854, 106 Am. St. 268, 68 L. R. A. 273. The characteristics which can serve as a basis of a valid classification must be such as to show an inherent difference in situation and subject-matter of the subjects placed in different classes which peculiarly requires and necessitates different or exclusive legislation with respect to them. *Bedford Quarries Co.* v. *Bough* (1907), 168 Ind. 671, 80 N. E. 529, 14 L. R. A. (N. S.) 418; *Selvage* v. *Talbott* (1911), 175 Ind. 648, 95 N. E. 114, 33 L. R. A. (N. S.) 973; *Hirth-Krause Co.* v. *Cohen* (1912), 177 Ind. 1, 97 N. E. 1; *Dixon* v. *Poe* (1902), 159 Ind. 492, 65 N. E. 518, 60 L. R. A. 308; *Billings* v. *Illinois* (1902), 188 U. S. 97, 23 Sup. Ct. 272, 47 L. Ed. 400; *Alexander* v. *City of Elizabeth* (1893), 56 N. J. Law 71, 28 Atl. 51, 23 L. R. A. 525; *State* v. *Sheriff of Ramsey County* (1891), 48 Minn. 236, 51 N. W. 112, 31 Am. St. 650; *State* v. *McFarland* (1910), 60 Wash. 98, 110 Pac. 792, 140 Am. St. 909.

"A proper classification must embrace all who naturally belong to the class—all who possess a common disability, attribute or qualification and there must be some natural and substantial difference germane to the subject and purposes of the legislation between those within the class included and those whom it leaves untouched. *Chicago, etc., R. Co.* v *Westby* (1910), 178 Fed. 619, 47 L. R. A. (N. S.) 97; *Selvage* v. *Talbott, supra; Hirth-Krause Co.* v. *Cohen, supra; Kraus* v. *Lehman* (1908), 170 Ind. 408, 83 N. E. 714, 84 N. E. 769; *Barrett* v. *Indiana* (1913), 229 U. S. 26, 57 L. Ed. 1050; *Seaboard Air Line* v. *Seegers* (1907), 207 U. S. 73, 28 Sup. Ct. 28, 52 L. Ed. 108; *Maercker* v. *Milwaukee, etc. R. Co., supra.* The legislature cannot take what might be termed a natural class of persons, split that class in two, and then arbitrarily designate the dissevered factions of the orig-

inal unit as two classes, and thereupon enact different rules for the government of each. *State* v. *Julow* (1895), 129 Mo. 163, 31 S. W. 781, 50 Am. St. 443, 29 L. R. A. 257; *State* v. *Miksicek* (1910), 225 Mo. 561, 125 S. W. 507, 135 Am. St. 597."

In the recent case of *Hayes* v. *Taxpayers Research Ass'n.* (1947), 225 Ind. 242, 72 N. E. 2d 658, the legislature passed an Act and limited its application to those townships that had purchased fire-fighting equipment prior to the taking effect of the Act. As in the case now before the court, an effort was made to sustain the legislation upon the theory that the legislature had a right to thus classify townships for legislative purposes. Beginning at page 246 of the opinion the court said:

"As a result we have a classification that is rather narrow and which hardly answers to the test of reasonableness. As we view it, the legislature can declare a taxing unit that is equal to, greater or less than the unit of the township, at least for some purposes, but it must be a classification that is reasonable and that inheres in the subject-matter of the legislation.

"Article 1, §23 of the Constitution of the State of Indiana is as follows:

" 'The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens.'

"Under Article 4, §22 of the Constitution of the State of Indiana, it is stated that:

" 'The General Assembly shall not pass local or special laws, in any of the following enumerated cases, that is to say:

" '.    .    .'

" '10.   Regulating county and township business;

" '.    .    .'

" '12.   For the assessment and collection of taxes for State, county, township, or road purposes;'

"Article 4, §23 of the Constitution of the State of Indiana is as follows:

" 'In all the cases enumerated in the preceding Section, and in all other cases where a general law can be made applicable, all laws shall be general, and of uniform operation throughout the State.'

"In discussing a tax statute this court in *Board, etc.,* v. *Johnson* (1909), 173 Ind. 76, 87, 89 N. E. 590, 594, said:

" 'The classification itself must be based upon natural reasons, upon reasons which naturally inhere in the subject-matter, upon a real difference existing between the classes, so as to produce no distinction between members of the same class.'

"In Crawford's Statutory Construction, p. 118, §82, it is said:

" 'In many instances, therefore, the validity of a general law will depend upon the basis for the classification of the subject-matter to which it applies. We have already stated that the classification must be a reasonable one. Moreover, it must be founded upon substantial distinctions, inherent in the subject-matter, which make one class really different from another; and the characteristics which form the basis of the classification must be germane to the purpose of the law.'

"In Sutherland's Statutory Construction by Horack (3rd ed.) Vol. 2, p. 20, §2106, the author in discussing classification makes this statement:

" '. . . Thus, classification must be prospective and permit the future entrance into the class when its qualification and standards have been met. The restrictions may place either wide or narrow limits on the class, but the nearer a classification comes to total generality the more susceptible it is to attack.

" 'A valid classification must include all who "naturally" belong to the class, all who possess a common disability, attribute, or classification, and there must be some natural and substantial differentiation between those included in the class and those it leaves untouched. When a class is accepted by the courts as "natural," it can not be again split and then have the dissevered factions of the

original unit designated with different rules of government established for each.'

"The recent case of *Perry Civil Twp.* v. *Indianapolis Power and Light Co.* (1943), 222 Ind. 84, 91, 51 N. E. 2d 371, 374, involved a question of classification and in that case this court said:

" 'Pass a law of general nature, without any words of application, and it operates uniformly throughout the state. Pass such a law and attempt to limit its operation (by a proviso or exception in the nature of a special act) and either the law or the limitation will be void. *Darling* v. *Rodgers* (1871), 7 Kan. 592.'

"In the case of *Indianapolis St. R. Co.* v. *Robinson* (1901), 157 Ind. 232, 236, 61 N. E. 197, 198, it was said:

" 'Interdicted, local and special laws are all those that rest on a false or deficient classification; their vice is that they do not embrace all the class to which they are naturally related; they create preference, and establish inequalities; they apply to persons, things or places possessed of certain qualities or situations, and exclude from their effect other persons, things or places which are not dissimilar in these respects.' "

In conclusion the court further said:

"The mere incident of having already purchased equipment gave to those townships a right to tax the whole township for the use of a lesser unit. That mere incident gave to those townships a right not granted to all townships under the same or similar conditions. Certainly the mere purchase before a given date could not instill into those townships a difference in character that reasonably could be said to inhere in the subject of fire-fighting in the favored townships. It is both artificial and arbitrary and in conflict with the constitutional inhibitions of Art. 1, §23 and Art. 4, §§22 and 23 of our basic law. *Fountain Park Co.* v. *Hensler* (1927), 199 Ind. 95, 155 N. E. 465; *State* v. *Wiggam* (1918), 187 Ind. 159, 118 N. E. 684; *Davis Construction Co.* v. *Board, etc.* (1922), 192 Ind. 144, 132 N. E. 629; *Ettinger* v. *Studevent; Hole*

v. *Dice* (1942), 219 Ind. 406, 38 N. E. 2d 1000; *Heckler* v. *Conter* (1934), 206 Ind. 376, 187 N. E. 878."

In the case of *Dowd, Warden* v. *Stuckey* (1943), 222 Ind. 100, 51 N. E. 2d 947, our Supreme Court states the rule as follows:

> "But this power is limited by the requirement that the classification must rest upon some rational and substantial basis inherent in the subject-matter, some difference in situation which distinguishes those within the class from those without, and which rationally justifies different or unequal treatment. Unless there is such a legal basis for classification, penalties imposed by criminal statutes must apply equally, without privileges or immunities on the one hand or additional burdens upon the other. These principals are fundamental."

In the case of *Kostanzer* v. *State ex rel. Ramsey* (1933), 205 Ind. 536, 187 N. E. 337, the court said:

> "One of the statutory 'good and just' causes is *insubordination,* which is defined as 'wilful refusal to obey the school laws of this state or reasonable rules prescribed for the government of the public schools of such corporation.' If the rule respecting marriage is a reasonable rule then appellee's marriage was an act of insubordination and constituted good and just cause for cancellation of her contract. The reason for our holding in *School City of Elwood* v. *State ex rel. Griffin, supra,* that marriage of a woman teacher is not legal cause for cancellation of her contract is that her marriage bears no reasonable relation to her fitness or capacity to hold the position of teacher in the public schools and to discharge the duties thereof. For the same reason we conclude that a rule forbidding marriage of a woman teacher or declaring that her marriage must 'automatically terminate her services as a teacher' is not a reasonable rule. Consequently appellee's refusal to obey the rule in question was not insubordination and did not constitute 'good and just cause' for cancellation of her contract."

For a classification based upon the marriage status of persons at the time a will was executed, the reasons for a law which provides that a subsequent marriage shall annul a will is equally applicable to a will made while a person is married and then becomes single and remarries, as where a person was never married and makes a will and then becomes married. A classification of this kind could not be sustained because it would clearly violate §23 of the Bill of Rights which provides: "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which upon the same terms, shall not equally belong to all citizens," and would also violate the provision of the Constitution against special legislation.

"In construing statutes, courts will seek a construction that avoids unconstitutionality." *State ex rel. Robertson* v. *Circuit Court of Lake Co.* (1939), 215 Ind. 18, 29, 17 N. E. 2d 805.

We must look to the title of the act for the scope of the enactment. *Dowd, Warden* v. *Johnston* (1943), 221 Ind. 398, 401, 47 N. E. 2d 976; *City of Indianapolis* v. *Evans* (1940), 216 Ind. 555, 567, 24 N. E. 2d 776; *State ex rel.* v. *Markey, Judge* (1937), 212 Ind. 59, 63, 7 N. E. 2d 989; *Zoercher* v. *Indiana Associated Telephone Corp.* (1937), 211 Ind. 447, 7 N. E. 2d 282; *Cyrus* v. *State* (1924), 195 Ind. 346, 348, 145 N. E. 497; *State* v. *Shelton* (1906), 38 Ind. App. 80, 88, 77 N. E. 1052.

If we are to be guided by the title of this act in determining the purpose and scope of the enactment, there is little room for controversy. This title states that it is an act to render null and void all wills executed before marriage, if the maker afterwards becomes married. There are no limitations, classifications or exceptions suggested. The nullifying fact is marriage after the will is executed. It clearly applies to all wills

whether made by males or females and suggests no distinction based upon the status of the maker, married or single, at the time the will was executed. There is not the slightest suggestion that the act would have no application if the maker was married at the time the will was executed. Such a distinction would be unreasonable, arbitrary, contrary to public policy and subject the legislature to the charge of attempting to make distinctions without a difference. Such a distinction could not be applied without giving special privileges, destroying equality of rights and subjecting the act to the constitutional inhibitions against special legislation. Intentions of this character cannot be attributed to the legislature if by any reasonable possibility it can be avoided.

In the case of *Dowd, Warden* v. *Johnston, supra,* beginning on page 401, we find the following language:

> "In construing a statute it is necessary to consider the whole act and all other law relating thereto, and, if possible, give effect to it in all its parts. *Huff* v. *Fetch* (1924), 194 Ind. 570, 143 N. E. 705.

> "Furthermore that construction should be favored which grants equality of rights and which is against restrictions of liberty. *Helms* v. *American Security Co.* (1939), 216 Ind. 1, 6, 22 N. E. 2d 822, 824; *In re Petition of Leach, Ex Parte* (1893), 134 Ind. 665, 671, 34 N. E. 641, 642, 21 L. R. A. 701, 706.

> "When a statute is doubtful or ambiguous, the title thereof may be a guide. *Garrigus et al.* v. *The Board of Commissioners of Parke County* (1872), 39 Ind. 66.

> "In *McNamara* v. *State* (1932), 203 Ind. 596, 601, 181 N. E. 512, 514, this court said:

> " 'In construing a statute, a court will not only look to the particular words used to ascertain the intent of the Legislature, but will also consider the title of the act, . . .'

> "The construction that should be given to a statute is one that will accomplish the intent of the

Legislature, even though such construction might be contrary to the strict letter thereof. *Northern Ind. R. Co.* v. *Lincoln Nat. Bank* (1911), 47 Ind. App. 98, 107, 92 N. E. 384, 387."

In the case of *City of Indianapolis* v. *Evans, supra,* it is stated:

"The purpose and scope of the act must be determined from the title. *Rexing* v. *Princeton Window Glass Co.* (1912), 51 Ind. App. 124. Courts will look to the general purpose of the statute and the evil to be remedied. *Board, etc.* v. *Given* (1907), 169 Ind. 468; *Thorn* v. *Silver* (1910), 174 Ind. 504; *Kelso* v. *Cook* (1916), 184 Ind. 173. The evil to be remedied and the purpose of the act is clear. From the title of the act it is evident that the legislature intended that when an obstruction, such as is here in question is erected, it should be painted white, or with black and white stripes alternating, in the absence of any showing why it could not have reasonably been so painted.

"Courts are not always bound by the strict literal meaning of the words used."

In the case of *Zoercher* v. *Indiana Associated Telephone Corp., supra,* it is stated as follows:

"In 2 Lewis's Sutherland, Stat. Constr. (2d Ed.) Sec. 348, we find the following language: 'Not only may the meaning of words be restricted by the subject-matter of an act or to avoid repugnance with other parts, but for like reasons they may be expanded. The application of the words of a single provision may be enlarged or restrained to bring the operation of the act within the intention of the legislature, when violence will not be done by such interpretation to the language of the statute.' In Endlich, Interp. of Stat., Sec. 73, it is said: 'The words of a statute are to be understood in the sense in which they best harmonize with the subject of the enactment and the object which the legislature has in view.' It is also said in 2 Lewis's Stat. Const. (2d Ed.) Sec. 347, 'When the intention can be col-

lected from the statute, words may be modified, altered or supplied so as to obviate any repugnancy or inconsistency with such intention. . . . The inquiry, where any uncertainty exists, always is as to what the legislature intended, and when that is ascertained, it always controls.' In the case of *Arnett* v. *State ex rel.* (1907), 168 Ind. 180, 188, 80 N. E. 153, it said, 'It is a fundamental rule of statutory construction that it is the intent or spirit of an enactment, rather than its letter, which is to govern. A construction will not be adopted which leads away from the true intent.' The intent of the legislature should be given effect, though the strict letter of the statute may not be followed. *Penn. Co.* v. *Mosher, supra.* And '. . . the legislative intention, as collected from an examination of the whole, as well as the separate parts, of a statute, will prevail over the literal import of particular terms, and will control the strict letter of the statute, where an adherence to such strict letter would lead to injustice, to absurdity, or to contradictory provisions.' *Stout* v. *The Board of Com'rs.* (1886), 107 Ind. 343, 347, 8 N. E. 222. In the case of *Cooper* v. *Metzger* (1881), 74 Ind. 544, 550, 551, it is said: 'The intention of legislators and the purpose of a statute ought not to be made to yield to one or more phrases, when the whole act evinces a different intention and purpose. . . . We are to look, not to isolate clauses, but to the entire statute, to ascertain the legislative intention.' "

In the case of *State* v. *Shelton, supra,* the court said:

"The rule is that where the title of the act limits its effect to certain things, the act itself cannot extend beyond such limitation. *Dixon* v. *Poe* (1902), 159 Ind. 492, 60 L. R. A. 308."

The cases cited also establish this familiar rule:

"Courts are not bound by the strict literal meaning of words or phrases, but must read them in harmony with the general purpose and subject-matter as shown by the title and the evil to be remedied."

298

In the case of *State ex rel.* v. *Markey, Judge, supra,* the court said:

> "In construing an Act, we must look both to the title and the body of the Act. We think the title of the act, when considered with the body, gives a clear idea of the intention of the legislature. As said in *Steiert* v. *Coulter* (1913), 54 Ind. App. 643, 652, 102 N. E. 113, 103 N. E. 117:
>
> " 'If the meaning of an act is doubtful, the title if expressive, may serve the purpose of removing the doubt either by extending the purview of the body of the act or by restraining or limiting it to the evident intention of the legislature.'
>
> "There can be no question here that the title is expressive. It is clear that it meant the act to apply to both civil and criminal cases. To hold that it is not applicable to civil cases, would contradict the evident intent of the legislature and if two constructions are possible, that one should be adopted which makes effectual, rather than one which defeats the purpose of the act. *Steiert* v. *Coulter, supra.*"

Applying this statement to the present act, we may say that the title is expressive. It is clear that it is meant to apply to all wills which were made before a marriage. To hold that it is not applicable to wills made during some other marriage and where the person becomes single and then remarried, would contradict the evident intent of the legislature.

It is a universal rule that all statutes will be read, construed and applied in favor of equality of rights, against special privileges, to prevent absurdity, hardships or injustice, and it is the duty of the courts to make statutes conform to the accepted principles of order and justice. *Helms* v. *American Security Co.* (1939), 216 Ind. 1, 5, 22 N. E. 2d 822; *Dixon* v. *Poe* (1902), 159 Ind. 492, 65 N. E. 518; *Lee* v. *Burns* (1932), 94 Ind. App. 676, 679, 182 N. E. 277; *In re*

*Petition of Leach, Ex Parte, supra; Dowd, Warden* v. *Johnston, supra.*

In the case of *Helms* v. *American Security Co., supra,* the court said:

> "We cannot agree with the appellee with respect to the functions of this court. It would lead to serious and evil consequences if courts should be powerless to say or to do anything if the legislative branch of the government should assume to enact unjust and oppressive laws, calculated to prejudice legitimate enterprise and create absurd situations. To meet such situations, if and when they arise, there have been estabilshed rules of statutory construction which may be applied to make statutes conform to the accepted principles of order and justice. It has accordingly been held that statutes should be construed in the most beneficial way the language will permit to prevent absurdity, hardship, or injustice and to favor public convenience and oppose all prejudice of public interests. *Gaebler* v. *Town of Rockville* (1933), 96 Ind. App. 715, 185 N. E. 318. All statutes are to be construed as far as possible in favor of equality of rights and against restrictions of human liberty and claims for special privileges. *Lee* v. *Burns* (1932), 94 Ind. App. 676, 182 N. E. 277."

The majority opinion relies on the case of *Hibberd* v. *Trask* (1903), 160 Ind. 498, 67 N. E. 179. In that case there was no question of classification involved, therefore, that case cannot be considered as an authority in favor of the validity of a classification such as we have in the Act before the court.

I am of the opinion that the intention of the legislature, by Chapter 309 of the Acts of 1913, rendered null and void a will made by either a male or a female who afterwards becomes married and marriage voids all wills made before the marriage, regardless of the testator's married or unmarried status at the time the will

300

was executed. The judgment in this case is contrary to law and should be reversed.

NOTE.—Reported in 101 N. E. 2d 830.