## REXING v. PRINCETON WINDOW GLASS COMPANY ET AL.

[No 7,202. Filed May 12, 1911. Rehearing denied October 13, 1911. Transfer denied July 2, 1912.]

1. MASTER AND SERVANT.—*Laborers' Liens.—Statutes.—Construction.*—Statutes giving a lien in favor of laborers, as a protection to their claims for wages, should be liberally construed in favor of such laborers. p. 127.

2. STATUTES.—*Construction.—Title.*—The purpose and scope of an act of the legislature must be determined from its title. p. 128.

3. MASTER AND SERVANT.—*Laborers' Liens.—Right to Lien.—Statutes.*—The right of a factory laborer to a lien under §8295 Burns 1908, Acts 1899 p. 569, providing that all claims for wages for mechanics and laborers employed in or about any shop, mill, etc., shall be a first lien on all machinery, tools, etc., located therein, or used in the business thereof, is not destroyed when the employer is in failing circumstances by the provision therein that "should the employer be in failing circumstances, the above mentioned claim shall be preferred debts, whether claim or notice of lien has been filed or not", but in such event such provision serves to enlarge the security given by the act by making preferred creditors of laborers who had not filed their liens. pp. 128, 129.

4. STATUTES.—*Construction.—Legislative Intent.*—The legislative intention, as collected from the whole, as well as the separate parts, of a statute, will prevail over the literal import of particular terms. p. 129.

5. MASTER AND SERVANT.—*Laborers' Liens.—Notice of Lien.—Effect as Against Trustee of Mortgage and Bondholders.*—The trustee of a mortgage executed by a manufacturing corporation, as

well as the holders of the bonds, are charged with knowledge that laborers employed in such factory are given a first lien for their wages on certain personal property therein, under §8295 Burns 1908, Acts 1899 p. 569. p. 130.

6. MASTER AND SERVANT.—*Laborers' Liens.—Superiority Over Mortgage.—Legislative Power.*—It is within the power of the legislature to make the lien of laborers on the product of their toil, and other personal property in the factory where they are employed, superior to the lien of a mortgage securing a bond issue. p. 130.

7. MASTER AND SERVANT.—*Laborers' Liens.—Attorney's Fees.*—A factory laborer recovering judgment in an action for the enforcement of the lien given by §8295 Burns 1908, Acts 1899 p. 569, is also entitled to the recovery of reasonable attorney's fees under §8307 Burns 1908, Acts 1883 p. 140, providing that on recovery of judgment under the provisions of the mechanics' lien act, the plaintiff shall be entitled to recover reasonable attorney's fees. p. 130.

From Gibson Circuit Court; *O. M. Welborn,* Judge.

Action by John B. Rexing against the Princeton Window Glass Company and others. From an adverse judgment, the plaintiff appeals. *Reversed.*

*William D. Hardy,* for appellant.

*Lucius C. Embree* and *Morton C. Embree,* for appellees.

ADAMS, J.—The question presented by this appeal is whether a laborer employed in and about a factory is entitled to hold a first lien on the personal property therein for his wages, or whether such laborer has no lien, but simply a preferred claim, when the firm or corporation is in failing circumstances.

The facts about which there is no controversy, as shown by the record, are briefly as follows: Appellant was employed as a laborer in and about the factory of the Princeton Window Glass Company, and left such employment on June 7, 1907, at which time there was due him for wages the sum of $392.50. On June 18, 1907, appellant filed notice of his intention to hold a lien on the real estate and personal property of said glass company, and in this action sought to enforce the same.

It is admitted that the glass company was in failing circumstances during the entire time the service was rendered for which this suit was brought. It is also admitted that on July 15, 1907, the Princeton Window Glass Company made a general assignment to Alois Ziliak, trustee, for the benefit of its creditors; that on July 14, 1905, the glass company executed a deed of trust to the American Trust and Savings Company of Evansville, Indiana, to secure an issue of bonds in the sum of $45,000, all of which were sold and outstanding prior to the employment of appellant; that the C. W. White Lumber Company is the holder of a judgment against the glass company in the sum of $632.62, recovered in an action to enforce its lien for materials sold and used in the construction and repair of the buildings of the glass plant, which judgment is prior to the mortgage of the American Trust and Savings Company; that the Inez Wild Glass Company is the holder of a judgment for $360.69; that the Gibson Oil and Gas Company is the holder of a judgment in the sum of $2,249.80. It is further admitted that no execution has been issued on the judgment of the Inez Wild Glass Company, nor on the judgment of the Gibson Oil and Gas Company.

The court found for appellant, and rendered judgment for $410.15, and that said amount was senior and superior to the claims of all general creditors. The court further found that appellant was not entitled to a lien for the amount of said judgment on the property of the glass company, or any part thereof, and that said judgment is junior and inferior to the liens herein set out. The motion for a new trial was overruled. Appellant then filed his motion to modify the judgment in the following particulars: That he be given a reasonable attorney's fee, and that his judgment be made and declared to be a first lien on the machinery, tools, stock of materials and work finished and unfinished, located in and about the factory of the Princeton Window Glass Company, junior to the lien of the C. W.

White Lumber Company, but senior to the mortgage of the American Trust and Savings Company, and the judgments of the Inez Wild Glass Company and the Gibson Oil and Gas Company. This motion was overruled, to which ruling appellant excepted, and assigns the same, together with the ruling on the motion for a new trial, as error in this court.

The error relied on for reversal calls for a construction of §8295 Burns 1908, Acts 1899 p. 569, which is as follows: "That contractors, sub-contractors, mechanics, journeymen, laborers and all persons performing labor or furnishing material or machinery for the erection, altering, repairing or removing any house, mill, * * * may have a lien separately or jointly upon the house, mill * * * which they may have erected, altered, repaired or removed, or for which they may have furnished material or machinery of any description, and on the interest of the owner of the lot or parcel of land on which it stands or with which it is connected to the extent of the value of any labor done, material furnished, or either; and all claims for wages for mechanics and laborers employed in or about any shop, mill * * * shall be a first lien upon all the machinery, tools, stock of material, work finished or unfinished, located in or about such shop, mill * * *, or used in the business thereof; and should the person, firm or corporation be in failing circumstances the above mentioned claim shall be preferred debts, whether claim or notice of lien has been filed or not."

In the cases of *Bass* v. *Doerman* (1887), 112 Ind. 390, 14 N. E. 377, and *Pendergast* v. *Yandes* (1890), 124 Ind. 159, 24 N. E. 724, 8 L. R. A. 849, it was held that statutes giving a lien in favor of laborers, as a protection to their claims for wages, should be liberally construed in favor of such laborers. It was held by the trial court that the concluding part of the above section—"and should the person, firm or corporation be in failing circumstances the above mentioned claim shall be preferred debts"—means literally what it says, and where, as in this case, it appears

that the employer is in failing circumstances, the claims of laborers for wages become merely preferred debts, and do not constitute a lien of any kind. We cannot concur in this interpretation.

The purpose and scope of an act of the legislature must be determined from its title. The act in question is entitled "An act concerning liens of mechanics, laborers and material men." It is an act relating to liens, and in furtherance of its purpose, the first part of the section in question gives to contractors, mechanics, laborers and materialmen a lien on the structure in which the material is used and on which the labor is performed, which lien also includes the real estate appurtenant to such building. The second part provides that the wages of laborers employed in or about any such mill or factory shall be a first lien on certain personal property in or about such factory.

In the absence of the concluding sentence, the meaning of the section would be obvious and the purpose clear to give the laborers in the factory a first lien on the personal property. The words "above mentioned claim", in the concluding sentence, clearly refer to the claim of laborers who are given a first lien on the property designated. It cannot be said that the legislature, by enacting this section of the mechanic's lien law, intended to do an absurd or contradictory thing; that it intended to give the laborer in the factory a first lien on the personal property in and about the same, when the employer is solvent and responsible, and when the laborer has no need of the security of a lien, only to take the lien away from him when the employer is in failing circumstances, and the laborer does need such security. Such a construction would defeat the evident purpose of the act.

"The legislative intention, as collected from an examination of the whole, as well as the separate parts, of a statute, will prevail over the literal import of particular terms, and

will control the strict letter of the statute, where an adherence to such strict letter would lead to injustice, to absurdity, or to contradictory provisions.'' *Stout* v. *Board, etc.* (1886), 107 Ind. 343, 347, 8 N. E. 222. See, also, *Middletown* v. *Greeson* (1885), 106 Ind. 18, 5 N. E. 755; *Miller* v. *State, ex rel.* (1886), 106 Ind. 415, 7 N. E. 209.

A strict interpretation of the concluding sentence would give the section an impossible meaning. It would mean that laborers in a factory are entitled to a first lien on the personal property for their wages, the lien to be acquired by giving notice as provided in the third section of the act. But if the employer should be in failing circumstances, the laborer would be forced to give up his right to hold a lien, even after he had given his notice, and become merely a preferred creditor, and his claim inferior to the claims of all lien holders. That this was not the legislative purpose clearly appears from the last words— ''whether claim or notice of lien has been filed or not.'' The manifest purpose was not to impair the security given by the act, but to enlarge it, by including laborers who had not filed their liens, in cases where the employer was in failing circumstances.

It is conceded that the judgment foreclosing the lien of the C. W. White Lumber Company, for materials used in the construction and repair of the glass plant, is superior to appellant's claim. No execution having been issued on the judgments of the Gibson Oil and Gas Company and the Inez Wild Glass Company, those judgments are liens on the real estate.

The deed of trust executed by the Princeton Window Glass Company to appellee American Trust and Savings Company, to secure a bond issue of $45,000, was executed in July, 1905, long prior to the rendering of the service by appellee, for which this suit is brought. The law enters into

and becomes a part of every contract, and the trustee, as well as the holders of the bonds, knew that the Princeton Window Glass Company was a manufacturing concern, and that its success depended on its operation; that labor would be required in the making of its product, and that the law, at that time, gave laborers employed in such a factory a first lien on certain personal property therein, to secure the payment of their wages. *Bass* v. *Doerman, supra; Bryson* v. *McCreary* (1885), 102 Ind. 1, 1 N. E. 55; *Edwards* v. *Johnson* (1886), 105 Ind. 594, 5 N. E. 716; *Brook* v. *Burlington, etc., R. Co.* (1879), 101 U. S. 443, 25 L. Ed. 1057.

It was within the power of the legislature to make the lien of laborers on the product of their toil, and other personal property in the factory, superior to the lien of a mortgage securing a bond issue. 1 Jones, Liens §744; *Watts* v. *Sweeney* (1891), 127 Ind. 116, 26 N. E. 680, 22 Am. St. 615; *Farmers Loan, etc., Co.* v. *Canada, etc., R. Co.* (1891), 127 Ind. 250, 26 N. E. 784, 11 L. R. A. 740; *Warren* v. *Sohn* (1887), 112 Ind. 213, 13 N. E. 863; *Brook* v. *Burlington, etc., R. Co., supra.*

It is provided by §8307 Burns 1908, Acts 1883 p. 140, that in all suits brought for the enforcement of any lien, under the provisions of the machanic's lien act, if the plaintiff or lien holder shall recover judgment in any sum, he shall be entitled to recover reasonable attorney's fees.

Our conclusion is that appellant is entitled to have his claim found to be a first lien on the property named in his motion, inferior only to the lien of the C. W. White Lumber Company. Appellant is also entitled to recover, in addition to the amount of his claim and interest, a reasonable attorney's fee. As the amount of this fee must be determined on the evidence, a new trial should be granted.

The judgment is therefore reversed, with instructions to

MAY TERM, 1912.    131

Schilling *v.* Indianapolis, etc., Traction Co.—51 Ind. App. 131.

grant a new trial, and for further proceedings in accordance with this opinion.

Myers, C. J., Lairy, P. J., Hottel, Ibach and Felt, JJ., concur.

Note.—Reported in 94 N. E. 1031. See, also, under (1) 26 Cyc. 1066; (2) 36 Cyc. 1133; (4) 36 Cyc. 1106, 1128; (6) 26 Cyc. 1072; (7) 26 Cyc. 1075. As to the intent of the law-makers as an essential guide in construing a law, see 12 Am. St. 827. As to the validity of mechanic's lien laws, see 4 Ann. Cas. 620; Ann. Cas. 1912 C 339.