**In re JONES & LAMSON MACHINE CO., INC., Debtor.**

**Howard FITCH, Edward Tatnall, Ronald Erb, and Robert Whaley, Plaintiffs,**

**v.**

**JONES & LAMSON MACHINE CO., INC. and Textron, Inc., Defendants.**

**Bankruptcy No. 5–86–00762.**

**Adv. No. 5–89–0060.**

United States Bankruptcy Court, D. Connecticut.

April 30, 1990.

Paul T. Deignan, Bamberger & Feibleman, Indianapolis, Ind., for plaintiffs.

Douglas Evans, Schatz & Schatz, Ribicoff & Kotkin, Hartford, Conn., for Textron, Inc.

### MEMORANDUM AND ORDER ON AMENDED MOTION FOR SUMMARY JUDGMENT

ALAN H.W. SHIFF, Bankruptcy Judge.

The plaintiffs assert a lien, pursuant to Indiana law, on a portion of the debtor's personal property. The defendant Textron, Inc. moves for summary judgment, claiming that the plaintiffs lack standing under

the Indiana law; that any security interest in the debtor's property is voidable under Bankruptcy Code § 545(1)(D); that the Indiana statute conflicts with Code § 507(a)(3); and that the lien notices filed by the plaintiffs violated the automatic stay imposed by Code § 362(a). For the reasons that follow, Textron's motion is denied.

## BACKGROUND

In May, 1985, Textron sold a machine tool business to the debtor-defendant for $34,000,000.00. As part of the purchase price, the debtor gave Textron four notes dated May 24, 1985 in the aggregate amount of $32,000,000.00 and a first security interest in certain assets. Subsequent to the purchase, the debtor operated manufacturing facilities in Springfield, Vermont and Cheshire, Connecticut and sales and service offices at various locations, including Indianapolis, Indiana. The plaintiffs worked as service technicians at the Indianapolis facility, where their duties included the demonstration, installation, service, and repair of machines.[1]

On November 10, 1986, the debtor filed a petition under chapter 11 of the Bankruptcy Code. On November 25, 1986, an order entered which granted the debtor's motion to use cash collateral and provided Textron adequate protection in the form of security interests in all of the debtor's property, including the Indianapolis facility. On December 8, 1986, each of the plaintiffs filed a "Sworn Statement and Notice of Intention to Hold Mechanic's Lien on Personal Property" with the Recorder of Marion County, Indiana, thereby asserting a lien under Indiana Code § 32-8-3-1 ("Section 1"), *see infra* at 126-27 for text, on personal property located at the Indianapolis facility valued at approximately $60,000.00 (the "property").[2] If the plaintiffs' liens are valid, they are prior in right to Textron's liens under the November 25, 1986 cash collateral order.[3] On July 18, 1988, the debtor was authorized under § 363(b) and (f) to sell all of its property and distribute the proceeds to Textron, which was required to hold $60,000.00 in escrow to satisfy the plaintiffs' claims if their liens were determined to be valid. On March 9, 1989, the plaintiffs commenced the instant adversary proceeding to determine the validity of their liens,[4] on December 26, 1989, Textron filed a motion for summary judgment, and on January 16, 1990, Textron filed the instant amended motion which subsumes its predecessor. The parties now stipulate that the amount of the plaintiffs' claims is $27,954.44, including regular salary, notice pay, severance pay, vacation pay, medical expenses, overtime pay, and out of pocket travel expenses.[5]

---

1. Howard Fitch was employed by the debtor from 1939 to November 13, 1986; Edward Tatnall from October 20, 1980 to November 13, 1986; Robert Whaley from July 7, 1986 to November 13, 1986; and Ronald Erb from July, 1973 to November 13, 1986.

2. Indiana Code § 32-8-3-3 provided:
 Any person who wishes to acquire a lien upon any property, whether his claim be due or not, shall file in the recorder's office of the county, at any time within sixty (60) days after performing such labor or furnishing such materials, or machinery, described in section 1 of this act, a sworn statement in duplicate of his intention to hold a lien upon such property for the amount of his claim, specifically setting forth the amount claimed, the name and address of the claimant and the name of the owner, and shall give legal description, street and number, if any, of such lot or land on which the house, mill, manufactory or other building, bridge, reservoir, system of waterworks or other structure may stand or be connected with or to which it may be removed.
 Ind.Code Ann. § 32-8-3-3 (West 1986).

3. Indiana Code § 32-8-3-5 provides in part:
 [A]ll liens so created shall relate to the time when the mechanic or other person began to perform the labor or furnish the materials or machinery, and shall have priority over all liens suffered or created thereafter, except the liens of other mechanics and materialmen, as to which there shall be no priority.

4. Pursuant to 28 U.S.C. § 157(b)(3), I find that this is a core proceeding under 28 U.S.C. § 157(b)(2)(K), and that I have jurisdiction under 28 U.S.C. §§ 1334(b) and 157(b)(1).

5. The plaintiffs also claim that they have incurred attorneys' fees of approximately $50,000.00 which are allowable under Code § 506(b) and Indiana Code § 32-8-3-14. Section 506(b) provides in part:

## DISCUSSION

### A.

Fed.R.Civ.P. 56(c), made applicable by Bankruptcy Rule 7056, provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In determining whether to grant summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Thus, while "[p]roperly employed, summary judgment allows the court to dispose of meritless claims before becoming involved in a frivolous and costly trial ..., [it] must ... be used selectively to avoid trial by affidavit." *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 58 (2d Cir.1987).

The moving party has the burden of showing that there are no relevant facts in dispute, and all reasonable inferences are to be drawn and all ambiguities are to be resolved in favor of the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Donahue, supra*, 834 F.2d at 57 ("[N]ot only must there be no genuine issue as to the evidentiary facts, but there must also be no controversy regarding the inferences to be drawn from them."). Materiality is determined by applicable substantive law. *Anderson, supra*, 477 U.S. at 248, 106 S.Ct. at 2510; *H.L. Hayden Co. of N.Y., Inc. v. Siemens Medical Sys., Inc.*, 879 F.2d 1005, 1011 (2d Cir.1989).

> To the extent that an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.
> Section 32–8–3–14 provides:
> In all suits brought for the enforcement of any lien under the provisions of this chapter, if the plaintiff or lienholder shall recover

### B.

Section 1 provides in relevant part:

> That contractors, subcontractors, mechanics, lessors ..., journeymen, laborers and all other persons performing labor or furnishing materials or machinery, ... for the erection, altering, repairing or removing any house, mill, manufactory, or other building, bridge, reservoir, systems of waterworks, or other structures, or for construction, altering, repairing, or removing any walk or sidewalk, ... stile, well, drain, drainage ditch, sewer or cistern or any other earth-moving operation may have a lien separately or jointly upon the house, mill, manufactory or other building, bridge, reservoir, system of waterworks or other structure, sidewalk, walk, stile, well, drain, drainage ditch, sewer or cistern or earth which they may have erected, altered, repaired, moved or removed or for which they may have furnished materials or machinery of any description, and, on the interest of the owner of the lot or parcel of land on which it stands or with which it is connected to the extent of the value of any labor done, material furnished, or either, ... and all claims for wages of mechanics and laborers employed in or about any shop, mill, wareroom, storeroom, manufactory or structure, bridge, reservoir, system of waterworks or other structure, sidewalk, walk, stile, well, drain, drainage ditch or cistern or any other earth-moving operation shall be a lien on all the machinery, tools, stock or material, work finished or unfinished, located in or about such shop, mill, wareroom, storeroom, manufactory or other building, bridge, reservoir, system of waterworks, or other structure, side-

> judgment in any sum, he shall also be entitled to recover reasonable attorney's fees, which shall be entered by the court trying the same, as a part of the judgment in said suit, however, attorney fees shall not be recovered as part of the judgment against the property owner in any suit in which it is shown that the contract consideration for such labor, material or machinery has been paid, in fact, by the property owner or party for whom the improvement has been constructed.

walk, walk, stile, well, drain, drainage ditch, sewer, or cistern or earth or used in the business thereof; and should the person, firm, or corporation be in failing circumstances the above mentioned claims shall be preferred debts whether claim or notice of lien has been filed or not.

Textron advances four arguments in support of its contention that the plaintiffs' liens are invalid.

### 1. Standing under Section Indiana Code § 32-8-3-1

Textron argues that the plaintiffs are not in the class of persons protected by Section 1 because (a) that statute only protects independent contractors, rather than employees of the owner of the liened property; (b) even assuming Section 1 protects employees, the plaintiffs did not do the type of work contemplated by the statute, *i.e.*, construction or improvement of property; and (c) the Indianapolis facility was not the type of facility to which the statute is applicable, *i.e.*, a manufacturing facility.

Textron's first two arguments are discredited by *Rexing v. Princeton Window Glass Co.*, 51 Ind.App. 124, 94 N.E. 1031 (1911) (construing Ind.Code § 8295 (Burns 1908), the predecessor of Section 1, which in relevant respects tracks the language of Section 1). In *Rexing*, an employee of a glass company, who worked as a laborer, filed notice of a lien on his employer's personal property. The Indiana court found that he was protected by the mechanics' lien statute. *Rexing, supra*, 51 Ind.App. at 125-30, 94 N.E. 1031. Moreover, I conclude that even if the plaintiffs did nothing more than make service calls, Textron's argument that only those who constructed or improved property are protected by Section 1 is defeated by the statute's plain language which also protects employees who work in a "wareroom ... [or] storeroom". But, the plaintiffs contend that they also installed and serviced machinery at the Indianapolis facility. It is therefore apparent that there is a factual dispute as to whether the plaintiffs would be protected by the statute even if it were read as narrowly as Textron contends.

Textron's third argument, that Section 1 only pertained to manufacturing facilities, is similarly defeated by the statute's plain language which includes "wareroom ... [or] storeroom". Further, as the plaintiffs note, the Indianapolis facility was part of the debtor's overall manufacturing process.

### 2. Security interest arising under Section 1 voidable under 11 U.S.C. § 545(1)(D)

Code § 545 provides in part:

The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—

(1) first becomes effective against the debtor—

....

(D) when the debtor becomes insolvent....

Textron focuses on the last clause of Section 1, "and should the ... corporation be in failing circumstances ...", and argues that any liens acquired by the plaintiffs arose as a result of the debtor's insolvency and are therefore voidable under § 545(1)(D). But the plain language of § 545(1)(D) defeats Textron's argument. *See also* S.Rep. No. 989, 95th Cong., 2d Sess. 85 (1987); H.R.Rep. No. 595, 95th Cong., 1st Sess. 371 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5871, 6327 (§ 545 "permits the trustee to avoid the fixing of certain statutory liens."). Voidable is not the equivalent of void. The latter is a nullity; the former requires some action before the loss of all viability. *See In re Boston Shipyard Corp.*, 886 F.2d 451, 455 (1st Cir.1989); *Sikes v. Global Marine, Inc.*, 881 F.2d 176, 178 (5th Cir.1989). The debtor, *see* 11 U.S.C. § 1107(a), could have but did not attempt to avoid liens under Section 1. Therefore, even assuming that liens arose in favor of the plaintiffs by the operation of the final clause of Section 1, § 545 is not implicated, and if otherwise valid the plaintiffs' liens remain valid.

Moreover, I find that the plaintiffs' liens are linked to the notice provisions of Section 1, not its last clause. The last clause merely gives an employee additional protection in the event that he or she did not file

the required notice within the 60–day time limit. Textron's assertion that the last clause replaces the mechanic's lien with a preferred claim in the event of insolvency is illogical. Under that interpretation, the Indiana legislaturé would be giving workers less protection in circumstances where they need more. *See Rexing, supra,* 51 Ind.App. at 128, 94 N.E. 1031 ("It cannot be said that the legislature, by enacting this section of the mechanic's lien law, intended to do an absurd or contradictory thing; that it intended to give the laborer in the factory a first lien on the personal property in and about the same, when the employer is solvent and responsible, and when the laborer has no need of the security of a lien, only to take the lien away from him when the employer is in failing circumstances, and the laborer does need such security. Such a construction would defeat the evident purpose of the act.").[6]

3. Conflict with 11 U.S.C. § 507(a)(3)

 Code § 507(a) provides:

The following expenses and claims have priority in the following order:

. . . .

(3) Third, allowed unsecured claims for wages, salaries, or commissions, including vacation, severance, and sick leave pay—

(A) earned by an individual within 90 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only

(B) to the extent of $2,000.00 for each such individual.

Textron argues that

Code section ... [507(a)(3) establishes] a wage priority [which] should supersede the Indiana statute which attempts to secure the status of wage claimants and grant them preferred status.... For

this Court to validate the Plaintiffs' claims would in essence elevate Indiana law to a position which would render Section 507(a)(3)` superfluous.

*Textron Memorandum* at 12–13.

Textron blurs the distinction between secured and unsecured claims. The nature of claims is governed by applicable state or federal non-bankruptcy law. *See Ohio v. Kovacs,* 469 U.S. 274, 285–86, 105 S.Ct. 705, 711, 83 L.Ed.2d 649 (1985) (O'Conner, J., concurring); *Butner v. United States,* 440 U.S. 48, 54–55, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136 (1979). Section 507(a) merely prioritizes unsecured claims classified under applicable non-bankruptcy law and is irrelevant to the treatment of secured claims.

Textron also makes a policy argument that massive numbers of employee secured claims could lead to reluctance on the part of post-petition lenders to advance funds. Even if policy considerations were appropriate in construing explicit statutory language, the plaintiffs effectively rebut that argument by raising an equally compelling policy argument, *i.e.,* that the employees who give value to a secured creditor's collateral should be protected.

4. 11 U.S.C. § 362(a)(4)

 Code § 362(a) provides:

[A] petition filed under section 301 ... of this title ... operates as a stay, applicable to all entities, of—

. . . .

(4) any act to create, perfect, or enforce any lien against property of the estate....

Textron argues that § 362(a)(4) enjoins the post-petition creation of a lien, that a mechanic's lien under Section 1 is created when a notice of intention to hold the lien is filed, and that the plaintiffs' liens are therefore null and void. Textron's argu-

---

**6.** Textron argues that *National Supply Co. v. Stranahan,* 161 Ind. 602, 69 N.E. 447 (1904), and *Sulzer–Vogt Mach. Co. v. Rushville Water Co.,* 160 Ind. 202, 65 N.E. 583 (1902), hold that liens of wage earner mechanics are founded upon the insolvency of their employer. I find, however, that those cases merely held that under a prede-

cessor to Section 1, the preferred debt provision did not protect claims for materials furnished or claims by mechanics, laborers, etc., involved in erecting, altering or repairing some structure, as distinguished from those employed in or about a shop, mill, etc.

ment is again defeated by the statute they rely upon.

Code § 362(b) provides:

The filing of a petition under section 301 ... of this title ... does not operate as a stay—

....

(3) under subsection (a) of this section, of any act to perfect an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title....

Section 546(b) makes the trustees avoiding powers "subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection." Under Indiana law, the mechanic's lien vests at and relates back to the time the work is performed. *Goodbub v. Estate of Hornung,* 127 Ind. 181, 191, 26 N.E. 770 (1891); Indiana Code § 32-8-3-5. A lien which relates back is the quintessential interest protected by § 546(b), as it has the effect of priming earlier perfected interests. *In re Microfab, Inc.,* 105 B.R. 152, 158 (Bankr. D.Mass.1989); S.Rep. No. 989, 95th Cong., 2d Sess. 86 (1978); H.R.Rep. No. 595, 95th Cong., 1st Sess. 371 (1977). Thus, the filing of the notices of intention to hold liens was merely the final step towards perfecting the plaintiffs' interest in the debtor's property, an interest which arose as of the date the plaintiffs performed work for the debtor. *See, Lincoln Sav. Bank FSB v. Suffolk County Treasurer (In re Parr Meadows Racing Ass'n, Inc.),* 880 F.2d 1540, 1546 (2d Cir.1989) ("[I]f a creditor possesses a prepetition interest in property, and state law establishes a time period for perfection of a lien based upon that interest, the 'lien does not lose its preferred standing by reason of the fact that it [is] not perfected until after the commencement of bankruptcy' so long as it is perfected within the time period established by state law."), *cert. denied,* — U.S. —, 110 S.Ct. 869, 107 L.Ed.2d 953 (1990).

CONCLUSION

Textron's motion for summary judgment is denied, and IT IS SO ORDERED.